## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

T. ERIC MONROE,

       Plaintiff

          v.

SOURCE DIGITAL, INC.;
NORTHSTAR SOURCE GROUP, LLC
and DOES 1-10,

       Defendants.

Case No.:  1:23-cv-06220-DEH

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION
## TO PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION

## TABLE OF CONTENTS

INTRODUCTION…………………………………………………………………1

STATEMENT OF FACTS…………………………………………………………1

LEGAL STANDARD………………………………………………………………3

ARGUMENT………………………………………………………………………4

I.    SDI'S USE OF THE PHOTOGRAPHS CONSTITUTES A FAIR
USE…………………………………………………………………………………4

        A.    **SDI's Purpose and Character of Use**………………………………..5

        1.    SDI's Use of the Photograph Was Non-Commercial…………………………5

        2.    SDI's Use Of the Photograph Was Transformative……………...……………7

        3.    SDI Acted In Good Faith……………………………………………….9

        B.    **Nature of the Copyrighted Work**……………………………...…..9

        C.    **Amount and Substantiality of the Use**…………………………...…10

        D.    **Effect of the Use on Potential Market**………………………………10

II.    PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
ON VIOLATION OF DMCA § 1202 SHOULD BE DENIED………………...……12

        A.    **There Exist Genuine Issues of Triable Fact as to Plaintiff's Claim Of
Removal of CMI Under § 1202(b)(1)**…………………………………12

        B.    **There Exist Genuine Issues of Triable Fact as to Plaintiff's Claims of
Removal and Distribution of CMI Under § 1202(b)(3)**………………………14

        C.    **There Exist Genuine Issues of Triable Fact as to
Plaintiff's Claims of False CMI Under § 1202(a)**…………………….………15

III.    THERE EXIST GENUINE ISSUES OF MATERIAL FACT AS TO PLAINTIFF'S
CLAIMS OF SDI'S WILLFUL CONDUCT …………….……………………….…..17

IV.    SUMMARY JUDGMENT MUST BE DENIED AS TO PLAINTIFF'S VICARIOUS
LIABILITY AND CONTRIBUTORY INFRIGEMENT CLAIMS AGAINST
NORTHSTAR SOURCE GROUP, LLC ………………………………………………...21

**A. There Exist Genuine Issues of Material Fact as to Plaintiff's Claim for Vicarious Liability**………………..……………………..21

**B. There Exist Genuine Issues of Material Fact as to Plaintiff's Claim for Contributory Infringement**…………………………..25

CONCLUSION……………………………………………………………………..25

# TABLE OF AUTHORITIES

<u>**Cases**</u>

*Adobe Systems Inc. v. Canus Prods., Inc.,*
173 F. Supp. 2d 1044(C.D. Cal. 2001)………………………………………..………………23

*Adobe Systems Inc. v. One Stop Micro, Inc.*,
84 F. Supp. 2d 1086 (N.D. Cal. 2000)…...…………………………………………………4

*Am. Geophysical Union v. Texaco Inc.*,
60 F.3d 913 (2d Cir. 1994)………………………………………………..………5, 12

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)………...…………………………………………………………4

*Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith*,
11 F.4th 26 (2d Cir. 2021)…………………………………………………….………10

*Associated Press v. Meltwater U.S. Holdings, Inc.*,
931 F. Supp. 2d 537 (S.D.N.Y. 2013)………………………………..…………….………6

*Arista Records LLC v. Lime Group, LLC*,
784 F. Supp. 2d 398, 435 (S.D.N.Y. 2011)…………………………...………………21

*Ass'n of Am. Med. Colls. v. Cuomo*,
928 F.2d 519 (2d Cir. 1991)……………………………..…………………………11

*Authors Guild v. Google, Inc*.,
804 F.3d 202 (2d Cir. 2015)…………………………………………………………7

*Baraban v. Time Warner, Inc.*
2000 WL 358375 (S.D.N.Y. Apr. 6, 2000)……………….…………………………..10

*Barcroft Media, Ltd. v. Coed Media Grp., LLC*,
297 F. Supp. 3d 339 (S.D.N.Y. 2017)……………………………..…………………10

*Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*,
27 F.4th 313 (5th Cir. 2022)……………………………………………...……8, 15

*Bell v. Moawad Grp., LLC*,
326 F. Supp. 3d 918 (D. Ariz. 2018)…………………………………… …….…..5, 12

*Bell v. Worthington City Sch. Dist.*,
2020 WL 2905803 (S.D. Ohio June 2, 2020)………………………………………….8

*Bill Graham Archives v. Dorling Kindersley Ltd*.,
448 F.3d 605 (2d Cir. 2006)……………………………..…………………………..…7, 9

*Boesen v. United Sports Publications, Ltd.*,
2020 WL 6393010 (E.D.N.Y. Nov. 2, 2020)………………………………….…………..6, 7

*Broad Music, Inc. v. JJ Squared Corp*.,
2013 WL 6837186 (E.D.N.Y. Dec. 26, 2013)…………………………………...……………18

*Byrne v. Brit. Broad. Corp*.,
132 F. Supp. 2d 229, 232 (S.D.N.Y. 2001)………..……………………………..…………6

*Campbell v. Acuff-Rose Music, Inc*.,
510 U.S. 569 (1985)…………………………………………………....……..……5, 11

*Close-Up Int'l, Inc. v. Berov*,
382 F. App'x 113 (2d Cir. 2010)……………………………………………………...17

*Consumers Union of U.S., Inc. v. Gen. Signal Corp.,*
724 F.2d 1044 (2d Cir. 1983)……………………………………………………5

*Craig v. UMG Recordings, Inc.,*
380 F. Supp. 3d 324  (S.D.N.Y. 2019)……………………………………… ……… ………13

*DC Comics, Inc. v. Reel Fantasy, Inc.,*
696 F.2d 24 (2d Cir. 1982)……………………………………………………...…5

*Design Basics, LLC v. Petros Homes, Inc.,*
240 F. Supp. 3d 712 (N.D. Ohio 2017)………………………………………………………5

*Disney Enters., Inc. v. Hotfile Corp*.,
2013 WL 6336286 (S.D. Fla. Sept. 20, 2013)…………………………………….…………..23

*Ellison v. Robertson*
357 F.3d 1072 (9th Cir. 2004)………………………………………..…………….…..21, 22

*Falkner v. Gen. Motors LLC,*
393 F. Supp. 3d 927 (C.D. Cal. 2018)………………………………… …………….....15

*Fox Broad. Co. v. Dish Network L.L.C.,*
747 F.3d 1060 (9th Cir. 2014)……………………………………………….……………..11

*Grecco v. Age Fotostock Am., Inc.,*
2021 WL 4555599 (S.D.N.Y. Oct. 5, 2021)……………………………………..……13

v

*Harbus v. Manhattan Inst. for Pol'y Rsch., Inc.*,
2020 WL 1990866 (S.D.N.Y. Apr. 27, 2020)……………………..…………………………..……10

*Harper & Row Publishers, Inc. v. Nation Enters.*,
471 U.S. 539 (1985)………………….………………………………..………………...5 13, 18

*In re Frontier Commc'ns Corp.*,
658 B.R. 277 (Bankr. S.D.N.Y. 2024)………………………………..…………………21

*Island Software & Computer Serv., Inc. v. Microsoft Corp.*,
413 F.3d 257 (2d Cir. 2005)…………………………………….……………………..…18

*Laser Kitten, LLC v. Marc Jacobs Int'l, LLC*,
2018 WL 4830091 (S.D.N.Y. Oct. 4, 2018)………………………………………………...16

*Lipton v. Nature Co.*,
71 F.3d 464, 472 (2d Cir 1995)……………………………………………………………...17

*Livnat v. Lavi*,
1998 WL 43221 (S.D.N.Y. Feb. 2, 1998)………………………………………..…………25

*Marano v. Metro. Museum of Art*,
472 F. Supp. 3d 76 (S.D.N.Y. 2020)………………………………………………...……9

*Maxtone-Graham v. Burtchaell*,
803 F.2d 1253 (2d Cir. 1986)………………………………………………………………5

*McGucken v. Newsweek LLC*,
2020 WL 2836427 (S.D.N.Y. June 1, 2020)………………………….…………………11

*McGucken v. Shutterstock*,
2023 WL 6390530 (S.D.N.Y. Oct. 2, 2023)………………………………………………...16

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
545 U.S. 913 (2005)…………………………………………………..………………21

*Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.*,
182 F3d 157 (2d Cir.1999)…..……………..…………………………………………4

*Otto v. Hearst Commc'ns, Inc.*,
345 F. Supp. 3d 412 (S.D.N.Y. 2018)…………………………...…………………………..10, 21

*Princeton Univ. Press v. Mich. Document Servs., Inc.*,
99 F.3d 1381 (6th Cir. 1996)………………………………….……………………..………...…11

vi

*Resource Developers, Inc. v. Stature of Liberty-Ellis Island Found., Inc.*,
926 F.2d 134 (2d Cir. 1991)…………………………………………………………...……17

*Pers. Keepsakes, Inc. v. Personalizationmall.com, Inc.*,
2012 WL 414803 (N.D. Ill. Feb. 8, 2012)……………………………………………………16

*Romanova v. Amilus Inc.*,
2023 WL 3061191 (S.D.N.Y. Apr. 24, 2023)………………………………………………..7

*Sadowski v. Zan Ng*,
2022 WL 799636 (S.D.N.Y. Mar. 15, 2022)………………………………………… ………13

*Schwartzwald v. Oath Inc.*,
2020 WL 5441291(S.D.N.Y. Sept. 10, 2020)……………………………….…….……..9, 10

*Sega Enter. Ltd. v. MAPHIA*,
948 F. Supp. 923(N.D. Cal. 1996)……………………………………………………………17

*Shapiro, Bernstein & Co. v. H.L. Green Co.*,
316 F.2d 304 (2d Cir. 1963)……………………………………………………………..…24

*Shihab v. Source Digital, Inc.*,
2024 WL 3461351 (S.D.N.Y. July 18, 2024)……………………………..……………….....14, 17

*Silverman v. CBS, Inc.*
632 F. Supp. 1344 (S.D.N.Y. 1986)……………………………..……………….……………17

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
464 U.S. 417 (1984)…………………………………………………………………………..11

*Sony Music Ent. v. Cox Commc'ns, Inc.*,
93 F.4th 222 (4th Cir. 2024)………………………………………….……………………….21

*Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*,
756 F.3d 73 (2d Cir. 2014)……………………………………………...…….……..……6, 7

*Tomelleri v. Zazzle, Inc.*,
2015 WL 8375083 (D. Kan. Dec. 9, 2015)……………………………………..………….16

*Young-Wolff v. John Wiley & Sons, Inc.*,
2016 WL 154115 (S.D.N.Y. Jan. 12, 2016)………………………………………………..17

*Zuma Press, Inc. v. Getty Images (US), Inc.*,
845 F. App'x 54 (2d Cir. 2021)…………………………………………………………….15

**<u>Statutes</u>**

17 U.S.C. § 107…………………………………………………………...………4,5

17 U.S.C. § 107(1)……………………………………………………………....5

17 U.S.C. § 107(3) …………………………………………………………11

17 U.S.C. § 1202(b)(1)…………………………………………………...12

17 U.S.C. § 1202(b)(3)………………………………………………   ……14

17 U.S.C. § 1202(a)……………………………………...…………………15

**<u>Rules</u>**

Fed. R. Civ. P. 56(c)…………………………………………………………..…4

**INTRODUCTION**

Plaintiff T. Eric Monroe ("Plaintiff") seeks summary adjudication of his claims against Defendant Source Digital, Inc. (Defendant" or "SDI") for willful copyright infringement and violation of the Digital Millenium Copyright Act ("DMCA"), and for claims of secondary infringement against Defendant NorthStar Source Group LLC ("NSG").

Plaintiff's infringement claims are meritless because of the long-established doctrine of fair use. At issue in this case are eleven photographs taken approximately thirty years ago depicting a number of hip-hop artists from that era (the "Photographs"). The Photographs were posted on SDI's Instagram account, and were promptly taken down soon after Plaintiff sent cease and desist letters. SDI's uses of the Photographs were transformative because they illustrated the historical and cultural significance of the Photographs by enabling viewers to associate and view the images with other content of similar historical and culturally significance. SDI's uses were noncommercial because SDI did not receive any direct financial benefit from the Instagram posts containing the Photographs.

Willfulness is a traditionally fact-intensive inquiry, and here Plaintiff's claims raise numerous issues of triable fact as to whether SDI acted with a willful state of mind. Similarly, Plaintiff's DMCA claims and secondary liability claims create further issues of triable fact, such that summary adjudication must be denied.

**STATEMENT OF FACTS**

I.      SOURCE DIGITAL, INC. AND NORTHSTAR SOURCE GROUP, LLC

SDI is a digital media publishing company, organized as a New York corporation. SDI services the digital platform for The Source magazine ("The Source"), the oldest news publication providing news, commentary and criticism on Hip-Hop, urban culture, politics, and lifestyle since 1988. (SDI's Counterstatement of Material Facts at ¶ 80 (hereinafter, "CSUF"); McMillan Decl. ¶

4).  After emerging from bankruptcy, The Source was reorganized under new ownership, and years later SDI was formed, in 2014. (CSUF ¶ 81; McMillan Decl. ¶ 5).

SDI and its contributors service and operate a website at www.thesource.com, which publishes content related to hip hop culture, arts, music, lifestyle, sports, and community news. (CSUF ¶¶ 81, 83; McMillan Decl. ¶¶ 5, 7).  SDI also services and operates an Instagram account titled "@thesource."  SDI uses the Instagram account to curate, aggregate and provide commentary on content of cultural relevance to hip hop, both in contemporary and historical context.  The account's purpose is to celebrate, preserve and educate as to the cultural and historical legacy of hip hop and maintain its relevance.  (CSUF ¶¶ 81, 87; McMillan Decl. ¶ 6, 11).

SDI engages independent contractors who are responsible for creating and publishing content on its website and Instagram account, as contributors.  All of SDI's contributors are independent contractors.  (CSUF ¶¶ 83, 84; McMillan Decl. ¶¶ 7, 8).  SDI does not generate revenue from contributor posts on its Instagram account, and did not generate any revenue from the posts that are the subject of this lawsuit. (CSUF ¶¶ 88, 89; McMillan Decl. ¶ 12).

NorthStar Source Group, LLC, a Delaware limited liability company, is an IP holding company that licenses The Source trademarks to SDI for use in connection with its media business. (CSUF ¶ 107; McMillan Decl. ¶ 36).   None of the independent contractors who work on SDI's behalf are engaged by NSG.  (CSUF ¶ 108; McMillan Decl. ¶ 37).   SDI and NSG are both part of a group of companies that do business under the unincorporated brand name "The NorthStar Group." (CSUF ¶ 111; McMillan Decl. ¶ 40).   For branding and public relations purposes, independent contractors engaged by companies within The NorthStar Group may use an email domain "@thenorthstargroup.biz" in their email correspondence, and use "The NorthStar Group" in their email signature blocks.  (CSUF ¶ 112; McMillan Decl. ¶ 41).   However, since The NorthStar

2

Group is neither a legal nor corporate entity, it does not employ or engage any staff or independent contractors. (CSUF ¶ 111; McMillan Decl. ¶ 40).

II.    THIS LITIGATION

Between 2020 and 2023, SDI's contributors published a number of posts on the @thesource Instagram account that Plaintiff alleges to have infringed his photographs.[1] On January 12, 2023, SDI received a cease-and-desist letter from Plaintiff's counsel, alleging that the eleven posts on the @thesource Instagram account infringed the copyright in Plaintiff's photographs and demanding that they be taken down.   As of January 26, 2023, SDI had located and taken down the Posts. (Abbott Decl. ¶ 4). Thereafter, SDI received a second cease and desist letter from Plaintiff's counsel on February 8, 2023, alleging that another post infringed Plaintiff's copyright in one of his photographs and demanding that it be taken down.   SDI took down this post on February 9, 2023. (Abbott Decl. ¶ 5).  Plaintiff filed his Complaint on July 19, 2023 (D.E. 1).  He filed his First Amended Complaint on September 6, 2023 (D.E. 8), alleging infringement in eleven Posts.  (D.E. 8-2).  On February 8, 2024, the parties participated in mediation through the Court-Annexed Mediation Program but were not able to reach a resolution, and commenced discovery thereafter. The deadline to complete discovery in this case expired on May 24, 2024.

## LEGAL STANDARD

On a motion for summary judgment, the moving party bears the initial burden to show that there is "no genuine issue as to any material fact" and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  This requires the moving party to establish beyond controversy every essential element of its claim or defense. Because summary judgment is a

---

[1] Monroe Decl, Ex. 2 (in order of how they appear in the Exhibit) ("Fat Joe & Big Pun Post"); ("Biggie & K-Ci Post"); ("Guru Post"); ("Dr. Dre & Ed Lover Post"); (Lauryn Hill & Common Post"); ("Nas Post"); ("Ol' Dirty Bastard Post"); ("D'Angelo & Lauryn Hill Post"); ("Fugees & Nas Post"); ("Wu-Tang Post"); ("Beyonce Post") (collectively, the "Posts").

"drastic device," cutting off a party's right to present its case to a jury, the moving party bears a

"heavy burden" of demonstrating the absence of any triable issue of material fact. *Nationwide Life*

*Ins. Co. v. Bankers Leasing Ass'n, Inc.,* 182 F3d 157, 160 (2d Cir. 1999). When ruling on a motion

for summary judgment, the court "must draw all reasonable inferences in favor of the non-moving

party, including questions of credibility and of the weight to be accorded particular evidence."

*Adobe Systems Inc. v. One Stop Micro, Inc.*, 84 F. Supp. 2d 1086, 1089 (N.D. Cal. 2000).

"'[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id*.

(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## **ARGUMENT**

I.     SDI'S USE OF THE PHOTOGRAPHS CONSTITUTES A FAIR USE

Section 107 of the Copyright Act codifies the judicial doctrine of fair use and states that

"the fair use of a copyrighted work, including such use by reproduction in copies . . . for purposes

such as criticism, comment, news reporting, teaching (including multiple copies for classroom

use), scholarship, or research, is not an infringement of copyright." 17 U.S.C. § 107

The Copyright Act lists four factors that courts should consider when evaluating where a use

is "fair."[2] "All are to be explored, and the results weighed together, in light of the purposes of

copyright." *Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 578 (1994).  A fair use defense can

succeed even if one or more factors favor the claimant.  *See id.*  "Because the fair use question is so

highly dependent on the particular facts of each case, courts generally, including this court, have

usually found it appropriate to allow the issue to proceed to trial." *Maxtone-Graham v. Burtchaell*,

---

[2] "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107.

803 F.2d 1253, 1258 (2d Cir. 1986) (citing *DC Comics, Inc. v. Reel Fantasy, Inc.,* 696 F.2d 24, 28

(2d Cir. 1982)). Summary judgment may be denied to a plaintiff where there exist disputed issues

of triable fact concerning defendant's fair use defense. *Bell v. Moawad Grp., LLC,* 326 F. Supp. 3d

918, 929 (D. Ariz. 2018); *Design Basics, LLC v. Petros Homes, Inc.*, 240 F. Supp. 3d 712, 7721-24

(N.D. Ohio 2017).

### A.    SDI's Purpose and Character of Use

1.    <u>SDI's Use of the Photographs Was Non-Commercial</u>

Section 107 expressly directs courts to consider whether the use "is of a commercial nature

or is for nonprofit educational purposes." 17 U.S.C. § 107(1). Determination of whether a use was

commercial does not turn on whether a defendant's business is for-profit. *Am. Geophysical Union v.*

*Texaco Inc.*, 60 F.3d 913, 921 (2d Cir. 1994). Rather, "[t]he crux of the profit/nonprofit distinction

is . . . whether the user stands to profit from exploitation of copyrighted material without paying the

customary price." *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 562 (1985).

The Second Circuit has recognized that "[a]lmost all newspapers, books and magazines are

published by commercial enterprises that seek a profit," *Consumers Union of U.S., Inc. v. Gen.*

*Signal Corp.,* 724 F.2d 1044, 1049 (2d Cir. 1983), and have discounted this consideration where

"the link between [the defendant]'s commercial gain and its copying is . . . attenuated" such that it

would be misleading to characterize the use as "commercial exploitation." *Swatch Grp. Mgmt.*

*Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 83 (2d Cir. 2014); *Assoc. Press v. Meltwater U.S.*

*Holdings, Inc.*, 931 F. Supp. 2d 537, 552 (S.D.N.Y. 2013) ("[w]here a defendant did not gain 'direct

or immediate commercial advantage' from the copying, its status as a for-profit enterprise is less

relevant").

"The question under factor one is the purpose and character of the [allegedly infringing]

use." *Byrne v. Brit. Broad. Corp*., 132 F. Supp. 2d 229, 234 (S.D.N.Y. 2001). SDI received no

"direct or immediate commercial advantage" from its use of the Photographs. SDI does not run advertisements on photographic posts on the @thesource Instagram account, including the Posts at issue (CSUF ¶ 90; McMillan Decl. ¶ 13), and does not generate any revenues from contributor posts, including the Posts at issue, or from any purported increase in views and engagements[3] on those Posts.   (CSUF ¶ 88, 89; McMillan Decl. ¶ 12; Paladino Decl., Ex. 9 at 80:11-81:12).[4] The @thesource Instagram account is not a profit center, its purpose is to celebrate, educate and inform as to hip hop culture, and Black and Latino culture generally, both historically and in a contemporary context. (CSUF ¶ 91; McMillan Decl. ¶¶ 12, 13, 14).

Plaintiff claims that SDI receives a financial benefit because the Instagram account "links" to the source.com website, but this does not demonstrate a connection between any puported commercial gain and the Posts at issue.  The single link referenced by Plaintiff appears only on the Instagram "profile page," and not on any of the Posts themselves.[5] (CSUF ¶¶ 93, 94; McMillan Decl. ¶¶ 16, 17); Paladino Decl., Ex. 2)  A viewer who accessed a Post in their Instagram feed through the app would be taken directly to that Post page – not to the profile page - and would not

---

[3] "Engagement" with an Instagram post is measured by "likes," "comments," "saves," and "'shares" for that post.  "About Instagram Insights," *available at* https://help.instagram.com/788388387972460 (last accessed August 7, 2024).

[4] Plaintiff asserts that SDI uses the @thesource Instagram account for "promotion and marketing on occasion," but this does establish a connection between an alleged commercial gain and the Posts at issue here.  SDI does not run advertisements on photographic posts on the @thesource Instagram account.  (CSUF ¶ 90; McMillan Decl. ¶ 13).  SDI has, in only two instances, years ago, used the @thesource Instagram account to display promotional content originating entirely from SDI's promotional partner, for a limited advertising campaign. These campaigns were wholly unrelated to, and operated separately from, the publication of content authored by SDI's contributors. (CSUF ¶ 95; McMillan Decl. ¶ 18).  The presence of advertisements on a website does not establish a connection between commercial gain and copying. *Boesen v. United Sports Publications, Ltd.*, 2020 WL 6393010, at *4 (E.D.N.Y. Nov. 2, 2020).

[5] Instagram's documentation explains that a website may be added to an account's profile page. "Add a website to your Instagram profile," *available at* https://help.instagram.com/362497417173378/?cms_platform=android-app&helpref=platform_switcher (Last accessed August 7, 2024).

have access to this link.  In order to access the link, a viewer would have to affirmatively and directly access the Profile page. (CSUF ¶ 94; McMillan Decl. ¶ 17).  If SDI intended to drive Instagram traffic to its website, it would include links on every Instagram post, which it has not done.  (CSUF ¶ 92; McMillan Decl. ¶ 15).  "Merely speculating that defendant has generated 'profits, income, receipts, or other benefits' from a work's use does not show a sufficient 'link between [the defendant]'s commercial gain and its copying,'" *Boesen*, 2020 WL 6393010, at *4 (citations omitted), particularly where there exists significant evidence that SDI did not receive a direct commercial benefit from use of Plaintiff's Photographs, creating issues of triable fact.

      2.    <u>SDI's Use Was Transformative</u>

To determine whether the secondary use is transformative, the "question is whether the new work merely supersedes the objects of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *Bill Graham Archives v. Dorling Kindersley Ltd*., 448 F.3d 605, 608 (2d Cir. 2006).  There is no requirement that a fair use must modify the original work; a secondary use "can be transformative in function or purpose [even] without altering or actually adding to the original work."  *Swatch Grp.*, 756 F.3d at 84 ("courts often find such uses transformative by emphasizing the altered purpose or context of the work").  "[A] transformative use is one that communicates something new and different from the original or expands its utility, thus serving copyright's overall objective of contributing to public knowledge." *Romanova v. Amilus Inc.*, 2023 WL 3061191, at *3 (S.D.N.Y. Apr. 24, 2023) (quoting *Authors Guild v. Google, Inc*., 804 F.3d 202, 214 (2d Cir. 2015).[6]

---

[6] "'[T]ransformative use is not absolutely necessary for a finding of fair use.' It just strengthens the claim to fairness. If expression is not transformative, other factors, like the extent of its commerciality, loom larger" and require a stronger showing." *Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*, 27 F.4th 313, 323 (5th Cir. 2022).  Courts have found fair use where a use was not transformative.  *Id.*; *Bell v. Worthington City Sch. Dist.*, 2020 WL 2905803, at *7 (S.D. Ohio June 2, 2020).

Plaintiff states that his Photographs are "photographs of hip-hop artists created in the 1990s." (SUF ¶ 5). The Photographs fulfill the purposes of artistic expression and depicting the young artists at the outset of their careers in the 1990s. In contrast, SDI's Instagram Posts present the Photographs in a new context – thirty years later – by illustrating the historical and cultural significance of the Photographs, through enabling viewers to associate and view the Photographs together with other content of similar historical and culturally significance through the use of Instagram hashtags. (CSUF ¶ 96; McMillan Decl. ¶ 19).

SDI includes Instagram hashtags with the Photographs in its Posts, such as #sourceclassics, #classics, #throwback, #throwbackthursdays, and #culture. (*see generally* Monroe Decl., Ex. 2). SDI requests that when the contributors post content that has historical significance, they use these hashtags. CSUF ¶ 97; McMillan Decl. ¶ 20) For example, "@Sourceclassics" refers to hip hop-related subject matter that was historically reported on by The Source magazine since its founding in the late 1980s. (CSUF ¶ 98; McMillan Decl. ¶ 21). The addition of this new element expands the Photographs' utility by allowing viewers to use the hashtags to recontextualize and organize the Photographs in a manner that helps illustrate their cultural and historical significance, by associating them with content from the same cultural and historical era.[7] (CSUF ¶¶ 96, 99, 10; McMillan Decl. ¶¶ 19, 22-24). This is a transformative use:

> What is relevant is not whether the exhibition comments on the Photo *per se*, such as the photographer's choice of lighting or focus, but whether it uses the Photo to help illustrate the historical and artistic significance of the guitar—a separate and distinct purpose from the Photo's original expressive purpose

---

[7] Instagram's documentation explains that the purpose of a hashtag is to organize all posts receiving that hashtag on their own hashtag page, which serves to organize posts by theme or category and make them accessible in that manner. *See* Instagram Help Center, Activity, Hashtags and Place Pages, "Use hashtags on Instagram," *available at* https://help.instagram.com/351460621611097 (Last accessed August 7, 2024).

*Marano v. Metro. Museum of Art*, 472 F. Supp. 3d 76, 85 (S.D.N.Y. 2020), *aff'd*, 844 F. App'x 436 (2d Cir. 2021), and *aff'd*, 844 F. App'x 436 (2d Cir. 2021); *see also Bill Graham Archives, 448 F.3d at 610-611* (rejecting that a secondary use is required to comment on the artistic value of a work where enhancing historical information was a transformative purpose).

        3.    <u>SDI Acted In Good Faith</u>

Courts will also consider the defendant's good or bad faith in using the work. *Harper & Row*, 471 U.S. at 562. The mere fact that SDI used Plaintiff's Photographs without seeking Plaintiff's authorization does not lead to a finding of bad faith. *Schwartzwald v. Oath Inc.*, 2020 WL 5441291, at *6 (S.D.N.Y. Sept. 10, 2020). When Plaintiff notified SDI of its allegations by email, SDI acted in good faith by promptly taking down the Posts. (Abbott Decl. ¶¶ 4, 5). This factor should weigh in favor of SDI. Additionally, as discussed in Section II.A below, there are significant issues of triable fact as to whether Plaintiff or third parties publicly displayed his Photographs prior to SDI's use in a manner lacking any indicia of ownership or authorship that would have alerted SDI to Plaintiff's rights.

    **B.**    **Nature of the Copyrighted Work**

The second fair use factor requires the Court to consider the "nature of the copyrighted work," including whether it is "expressive or creative . . . or more factual, with a greater leeway being allowed to a claim of fair use where the work is factual or informational." *Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith*, 11 F.4th 26, 45 (2d Cir. 2021). This factor may have little significance in the context of a transformative use. *Baraban v. Time Warner, Inc.*, 2000 WL 358375, at *4 (S.D.N.Y. Apr. 6, 2000).

Photographs can vary on the spectrum of factual to creative. The fact that the Photographs were taken by a professional photographer is, by itself, insufficient. *Harbus v. Manhattan Inst. for Pol'y Rsch., Inc.*, 2020 WL 1990866, at *6 (S.D.N.Y. Apr. 27, 2020). Courts have found

photographs to be factual where a photographer captured the subject as it naturally appeared, and did not direct or pose the subject of the photograph, alter the lighting or the background or otherwise influence the activity, pose, expression or clothing.[8]  Here, the Photographs do not reflect significant direction by Plaintiff.  These shots were taken as their subjects naturally appeared, in the settings they happened to be in, without altered lighting or backgrounds.  (D.E. 29 at 4-5; Monroe Decl., Ex. 2).  Accordingly, they fall on the factual end of the spectrum.

C.      **Amount and Substantiality of the Use**

The third fair use factor examines "the amount and substantiality of the portion used in relation to the copyrighted work as a whole," 17 U.S.C. § 107(3), and the third factor asks whether "the amount and substantiality of the portion used in relation to the copyrighted work as a whole . . . are reasonable in relation to the purpose of the copying." *Campbell*, 510 U.S. at 586. Additionally, "this factor 'weighs less when considering a photograph — where all or most of the work often must be used in order to preserve any meaning at all — than a work such as a text or musical composition, where bits and pieces can be excerpted without losing all value.'" *McGucken v. Newsweek LLC*, 2020 WL 2836427, at *8 (S.D.N.Y. June 1, 2020).  Here, the Post needed to show enough of the images to identify them in order to illustrate their cultural and historical significance. Accordingly, this factor weighs in favor of a finding of fair use.

D.      **Effect of the Use on Potential Market**

When a defendant uses a copyrighted work for noncommercial purposes, the Court has placed the burden on the plaintiff to show "by a preponderance of the evidence that *some* meaningful likelihood of future harm exists." *Sony Corp. of Am. v. Universal City Studios, Inc.*,

---

[8] *Otto v. Hearst Commc'ns, Inc.*, 345 F. Supp. 3d 412, 430 (S.D.N.Y. 2018); *Barcroft Media, Ltd. v. Coed Media Grp., LLC*, 297 F. Supp. 3d 339, 354 (S.D.N.Y. 2017); *Schwartzwald*, 2020 WL 5441291, at *7; *Harbus*, 2020 WL 1990866, at *6.

464 U.S. 417, 451 (1984); *see also Fox Broad. Co. v. Dish Network L.L.C.*, 747 F.3d 1060, 1069

(9th Cir. 2014) (finding fourth factor weighed in favor of fair use where challenged use was for

noncommercial purpose and the plaintiff failed to show likelihood of market harm); *Princeton Univ.*

*Press v. Mich. Document Servs., Inc.*, 99 F.3d 1381, 1385 (6th Cir. 1996) ("The burden of proof as

to market effect rests with the copyright holder if the challenged use is of a 'noncommercial'

nature."); *Ass'n of Am. Med. Colls. v. Cuomo*, 928 F.2d 519, 526 (2d Cir. 1991) (Mahoney, J.,

concurring).

     As discussed above in Section I(A)(i), SDI's use of Plaintiff's Photographs was of a

noncommercial nature. (CSUF ¶¶ 88-91; McMillan Decl. ¶¶ 12, 13, 14). Plaintiff therefore has the

burden to show that "some meaningful likelihood of future harm exists." Plaintiff has not provided

any license agreements or evidence that he licensed the Photographs for online use, or otherwise

established a licensing market for online use of his Photographs. (Abbott Decl. ¶ 6). Nor has

Plaintiff identified any business that he lost as a result of SDI's posts, or as a result of other

unauthorized online uses of the Photographs.

     Licensing of the Photographs for social media is a market that Plaintiff has not been

"reasonably able to obtain or capture." *Am. Geophysical Union,* 60 F.3d at 930 ("the fourth factor

will favor the secondary user when the only possible adverse effect occasioned by the secondary use

would be to a potential market or value that the copyright holder has not typically sought to, or

reasonably been able to, obtain or capture"). Absent any evidence of any actual harm to Plaintiff

from the widespread use of his Photographs, or any evidence of a licensing market for online use of

Plaintiff's Photographs during the nearly thirty years since they were created, there is no market

harm because there is no market, nor could there be any potential harm to a non-existent market if

such usage was widespread. Plaintiff has failed to meet his burden of showing "some meaningful

likelihood of future harm." *Id*. ("[i]t is sensible that a particular unauthorized use should be considered "more fair" when there is no ready market or means to pay for the use").

In *Bell v. Moawad Grp., LLC*, the court denied plaintiff's motion for summary judgment on defendant's fair use defense where, although the work had been copied "verbatim," it was available widely online, the plaintiff had presented no evidence of actual market harm, and there were disputed issues of fact as to the commercial nature of defendant's use. 326 F. Supp. 3d 918, 929 (D. Ariz. 2018). The same facts and circumstances are present here and there are, at a minimum, issues of triable fact precluding summary judgment.

II.    PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
       ON VIOLATION OF DMCA § 1202 SHOULD BE DENIED

   A.    **There Exist Genuine Issues of Triable Fact as to
          Plaintiff's Claim Of Removal of CMI Under § 1202(b)(1)**

To prove a violation of 17 U.S.C. 1202(b)(1), a plaintiff must show that defendant, "without the authority of the copyright owner or the law – (1) intentionally remove[d] or alter[ed] any copyright management information." Plaintiff has alleged that Plaintiff's original "Subject Photographs" contained copyright management information ("CMI") consisting of Plaintiff's mark "@tdoteric," while the versions of the photographs used in SDI's Posts did not. (SUF ¶¶ 10, 11). Plaintiff alleges that the versions of his photographs used in the Posts appear to be "cropped" and do not have the "@tdoteric" mark that Plaintiff claims was stamped on his original photographs (SUF ¶¶ 23, 24). However, there is no allegation that SDI "cropped" or otherwise removed Plaintiff's "@tdoteric" mark from the versions of the photographs it used, nor that SDI did so intentionally.[9]

_____

[9] The contributor who authored the "Fat Joe and Big Pun Post" and the "Lauryn Hill and Common Post" has stated, in a declaration filed in another case, that he has never removed a name or mark from a photograph that he used in a post on the @thesource Instagram account. (Abbott Decl. ¶ 12, Ex. C at ¶ 6).

Courts in this district have held that, on summary judgment, evidence of missing CMI alone is insufficient to show that a defendant acted with the requisite intent.[10]

In his First Amended Complaint, Plaintiff identified his "original photography," which he defined as the "Subject Photography" and referred to the attached Exhibit A.  (D.E. 8 at ¶ 12).  In Exhibit A, Plaintiff set forth the eleven items of "original photography" that he claims SDI infringed.[11]  However, none of the photographs in "Exhibit A" contain the "@tdoteric" mark or any other information comprising CMI. (D.E. 8-1).  Seeking to substantiate his DMCA claims, Plaintiff has submitted with his motion an entirely new exhibit containing different versions of the eleven Photographs, which now bear the "@tdoteric" mark.   (Monroe Decl., Ex, 1).  By pleading certain versions of his photographs as the "original photographs" in his First Amended Complaint, subject to Rule 11, and then contradicting those allegations by submitting entirely different versions of the photographs that he now claims to be the original "Subject Photographs," Plaintiff has injected critical issues of triable fact and credibility regarding the nature of his original photographs and the existence of CMI.

There is no evidence that these new versions of the Photographs with the "@tdoteric" mark, which Plaintiff now claims to be his original photographs, were publicly available prior to their use by SDI.  Under very similar facts, the court has denied summary judgment as to DMCA § 1202. *Shihab v. Source Digital, Inc.*, 2024 WL 3461351, at *9 (S.D.N.Y. July 18, 2024) (denying

---

[10] *Sadowski v. Zan Ng*, 2022 WL 799636, at *8 (S.D.N.Y. Mar. 15, 2022) (holding that screenshots of images on websites without CMI were insufficient evidence to sustain claim for § 1202(b) violation); *Grecco v. Age Fotostock Am., Inc.*, 2021 WL 4555599, at *7 (S.D.N.Y. Oct. 5, 2021) (granting summary judgment on § 1202(b)(1) claim where there was no evidence that defendant had intentionally removed CMI or that the photographs at issue had CMI when defendant obtained them); *Craig v. UMG Recordings, Inc.*, 380 F. Supp. 3d 324, 338 (S.D.N.Y. 2019) (same).

[11] Plaintiff identified these same versions of the photographs in his original Complaint as well. (D.E. 1 ¶ 12; D.E. 1-1).

summary judgment where no evidence that photos containing CMI had been published prior to alleged infringement).

Moreover, there are examples of versions of these same photographs available on third party websites that do not contain Plaintiff's "@tdoteric" mark, and which were posted prior to the publishing of SDI's Posts. This demonstrates that versions of the photographs were available online regardless of whether Plaintiff did not authorize online use, and that they did not contain his "@tdoteric' mark or other CMI. (Abbott Decl. ¶ 10, Ex. A).[12] A reasonable jury could conclude that there were numerous versions if these photographs available prior to SDI's use, including versions without any CMI.

Plaintiff has not shown that SDI intentionally removed CMI from his photographs, and a reasonable jury could infer that SDI did not "crop" any CMI from the photographs it used because there was no CMI in those versions. At a minimum, there exist issues of material fact, and all inferences must be drawn in Defendants' favor.

**B.      There Exist Genuine Issues of Triable Fact as to
Plaintiff's Claims Of Removal and Distribution of CMI Under § 1202(b)(3)**

In order to show a violation of Section 1202(b) (3), a plaintiff must satisfy a "double-scienter requirement," by showing that "the defendant who distributed improperly attributed copyright material must have actual knowledge that CMI 'has been removed or altered without authority of the copyright owner or the law,' as well as actual or constructive knowledge that such distribution "will induce, enable, facilitate, or conceal an infringement.'" *Zuma Press, Inc. v. Getty Images (US), Inc.*, 845 F. App'x 54, 57-58 (2d Cir. 2021).

---

[12] In addition, there are examples of the Photographs at issue being displayed online well before SDI's Posts were published, in articles that favorably discuss Plaintiff and which were doubtless authorized by him for use in connection with the articles. These versions of the Photographs are not stamped with "@tdoteric" or any other CMI, indicating that the original photographs did not contain CMI, and that there are multiple versions of the Photographs circulating online. (Abbott Decl., Ex. B).

Since, as discussed on the previous section, there exist issues of triable fact as to whether SDI removed CMI in connection with the Photographs, and inferences are drawn in a defendant's favor, as discussed *supra*, it follows that there are similarly issues of triable fact as to whether SDI had any actual knowledge of removal or alteration of SDI, or knowledge that such removal would enable or conceal an infringement. *See Falkner v. Gen. Motors LLC*, 393 F. Supp. 3d 927, 939 (C.D. Cal. 2018) ("there can be no knowledge of any removal or alteration if there is no underlying removal or alteration").

### A. There Exist Genuine Issues of Triable Fact as to Plaintiff's Claims of False CMI Under § 1202(a)

Under § 1202(a), "no person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement (1) provide copyright management information that is false, or (2) distribute or import for distribution copyright management information that is false." Plaintiff claims that the use of the #sourceclassics hash tag and the appearance of "The Source" in the header of each post on the @the source Instagram constitutes false CMI. Plaintiff fails to show that these are "false CMI," that they are used in connection with the Posts, or that they were used with the requisite intent.

In a case with relevant facts identical to this one, Judge Cote rejected these same arguments and denied summary judgment as to § 1202(a), holding that "the defendant's Instagram account handle, @thesource, and its hashtag, #sourceclassics, are not conveyed 'in connection with' the work. They do not identify either the title or author of the Posted Photo." *Shihab*, 2024 WL 3461351, at *8 (citing *McGucken v. Shutterstock*, 2023 WL 6390530, *10-11 (S.D.N.Y. Oct. 2, 2023).

Plaintiff has not offered any evidence establishing that SDI's use of the "#sourceclassics" hash tag and use of "The Source" name in the header of each of its Instagram posts knowingly and falsely claimed authorship or copyright ownership in the images used in each post. The hashtag

#sourceclassics does not authorship over the Post content, but refers to subject matter that was historically reported on by The Source magazine, and its purpose is to illustrate the historical significance of the post's content, by allowing users to retrieve and view all similar posts together that are marked with the same tag. (CSUF ¶¶ 98, 99; McMillan Decl. ¶¶ 21-22) (*see* footnote 7, *supra*).  "The Source" is simply the official name of the Instagram account that appears in each post header in the same manner that an account name appears in every Instagram post header. (CSUF ¶ 101; McMillan Decl. ¶ 25). "The Source" header is not added by each contributor, it is automatically generated by the account and displayed in the header each time a post is created and published. (CSUF ¶ 102; McMillan Decl. ¶ 26).[13]

Plaintiff argues that the alleged CMI is false because it would "imply that Defendants had a license" or imply an "association" with Plaintiff (Pls. Mot. at 19), but this seeks to improperly expand the definition of CMI.  "The point of CMI is to inform the public that something is copyrighted." *Laser Kitten, LLC v. Marc Jacobs Int'l, LLC*, 2018 WL 4830091, at *4 (S.D.N.Y. Oct. 4, 2018).  CMI is intended to identify a particular work, the author of that work, and the copyright owner of that work.  17 U.S.C. 1202(c); *Craig*, 380 F. Supp. 3d at 337; *Laser Kitten, LLC*, 2018 WL 4830091, at *4 (finding no violation of 1202(a) where plaintiff failed to allege that false CMI "signaled authorship or copyright ownership").  To be "false," CMI must be understood to falsely assert the author or owner of the copyright.  Here, #sourceclassics and "The Source" are

---

[13] "Indeed, websites generally do not claim ownership or authorship over an image just because the image appears on the website." *Tomelleri v. Zazzle, Inc.,* 2015 WL 8375083, at *12 (D. Kan. Dec. 9, 2015) (explaining that, "[f]or example, when a user visits google.com or imdb.com a number of images come up, but no user is lead to believe that the websites created or owns these images"); *see also Pers. Keepsakes, Inc. v. Personalizationmall.com, Inc.*, 2012 WL 414803, at *7 (N.D. Ill. Feb. 8, 2012) (holding that incorrect copyright notice included "at the bottom of every page of the website in the generic website footer" was not "conveyed with" the works, and was therefore not false CMI).

not CMI, nor do they assert that SDI is the owner or author of the Photographs.  *Shihab*, 2024 WL 3461351, at *8.

As Plaintiff has failed to show that SDI provided false CMI in connection with the Photographs, he has failed to show that such action was taken with the intent to conceal or enable infringement.  SDI's inclusion of a photographer credit for Plaintiff in certain Posts, in the form of a photographer tag containing Plaintiff's "@tdoteric" Instagram handle,[14] shows SDI had no intent to infringe or to conceal or enable infringement.  It makes no sense that SDI or its contributors would intentionally seek to include "false CMI" claiming authorship in these photographs while also including attribution to the photograph's author.

III.    THERE EXIST GENUINE ISSUES OF MATERIAL FACT
        AS TO PLAINTIFF'S CLAIMS OF SDI'S WILLFUL CONDUCT

Generally, the issue of willful copyright infringement is an issue of fact to be resolved by the jury.  *Lipton v. Nature Co.*, 71 F.3d 464, 472 (2d Cir. 1995) (citing *Resource Developers, Inc. v. Statue of Liberty–Ellis Island Found., Inc.,* 926 F.2d 134, 141 (2d Cir. 1991); *Silverman v. CBS Inc.*, 632 F. Supp. 1344, 1352-53 n.11 (S.D.N.Y. 1986).  This is because a determination as to willfulness requires an assessment of a party's state of mind, a factual issue that is not usually susceptible to summary judgment.  *Shihab*, 2024 WL 3461351, at *8; *Sega Enter. Ltd. v. MAPHIA,* 948 F. Supp. 923, 936 (N.D. Cal. 1996).  "'Generally speaking, summary judgment is not a tool well suited to determining willfulness.'"  *Young-Wolff v. John Wiley & Sons, Inc.*, 2016 WL 154115, at *10 (S.D.N.Y. Jan. 12, 2016) (quoting *Close-Up Int'l, Inc. v. Berov*, 382 F. App'x 113, 117 (2d Cir. 2010).

Plaintiff asserts that "willfulness can be inferred based on Defendants' conduct."  However, on summary judgment, all inferences must be drawn in favor of the non-moving party.  *Island*

_____

[14] *See* Monroe Decl., Ex, 2 ("Big Pun & Fat Joe Photo;" "Lauryn Hill & Common Photo;" 'D'Angelo & Lauryn Hill Photo;" Nas & Fugees Photo;" "Wu-Tang Photo;" "Beyonce Photo").

*Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 263–64 (2d Cir. 2005) (holding that even where "an inference of constructive knowledge or reckless conduct seems the better of the possible inferences that can be drawn, we must still draw all inferences in favor of the non-moving party"); *see also Broad. Music, Inc. v. JJ Squared Corp.,* 2013 WL 6837186, at *9 (E.D.N.Y. Dec. 26, 2013).  Plaintiff has offered only circumstantial evidence that it purports to establish SDI's allegedly willful state of mind.  As discussed below, this evidence is rife with issues of material fact.

When Plaintiff brought his allegations concerning use of the Photographs to SDI's attention, SDI promptly removed them from display on its Instagram account.  (CSUF ¶¶ 117, 118; Abbott Decl. ¶¶ 4, 5).  Plaintiff argues that SDI must have known of his rights because he "routinely published" the Photographs with his signature, and that SDI must have cropped Plaintiff's signature off the images. (Pls. Mot. at 9).  However, as discussed above, the allegations in Plaintiff's First Amended Complaint show that his original Photographs never contained his signature, nor any other identifying indicia.  (D.E. 8 at ¶ 12; D.E. 8-1).  Nor has Plaintiff demonstrated that he "routinely published" his Photographs with his signature in the time period prior to the alleged infringement.  Plaintiff argues that SDI must have gotten the Photographs from Plaintiff's website because "no other websites [were] currently authorized" to display them."  This argument fails.  First, it is inaccurate - there are existing uses of Plaintiff's Photographs online that were clearly authorized by him.  (Abbott Decl., Ex. B).  Second, the argument fails to account for unauthorized online uses, and there is evidence that many of the Photographs were displayed on third party websites during this time, which did not contain Plaintiff's signature or identifying information.  (Abbott Decl., Ex. A).   For the reasons discussed in Section II.A above, a jury could reasonably infer that the versions of the photographs that SDI's contributors used were versions that did not contain any identifying information.

Plaintiff claims that the fact that Plaintiff's photos were used without his permission shows that SDI's copyright policies have been developed and implemented with a willful state of mind. SDI publishes copyright polices and guidelines for its contributors, and does not give posting privileges until contributors have demonstrated that they understand and can abide by these guidelines. (CSUF ¶ 86; McMillan Decl. ¶ 10).  Moreover, the guidelines instruct that contributors must consult with SDI's counsel in all instances where they are unsure if use of content is authorized.  (Paladino Decl., Exs. 4, 5, 10).   Contributors are provided and expected to sign independent contractor agreements in which they agree, and represent and warrant, that the all work submitted for publishing, including photographs, does not violate copyright laws, and that they indemnify SDI against claims arising from publication of their work. (Paladino Decl., Ex. 8; McMillan Decl. ¶ 29).   Plaintiff claims that Defendant's copyright policies only permit the use of photographs from "certain authorized websites." (Pls Mot. at 10).  This is inaccurate.  SDI's policies also permit use of photographs that are owned by SDI, and contemplate that uses may be permitted in specific circumstances under the fair use doctrine. (Paladino Decl., Ex. 4).

Plaintiff alleges that SDI's copyright policies do not include disciplinary procedures. This is inaccurate. As a matter of policy, SDI has disciplined and terminated its contributors for violating its copyright policies, and where appropriate, has taken legal action against more egregious contributors.  (CSUF ¶ 103, McMillan Decl. ¶ 27).  Moreover, SDI's contributors are well aware that they are subject to discipline and termination if they violate SDI's copyright policies, as this has been communicated to them in meetings and informally, and because contributors have been previously terminated and/or disciplined for violating SDI's copyright policies.  (CSUF ¶¶ 103, 104; McMillan Decl. ¶¶ 27, 28).[15]

---

[15] Plaintiff appears to claim that SDI is not carrying out its disciplinary policy because a contributor who posted infringing content in a separate case was also involved in this case (Pls. Mot. at 11). However, the Posts that this contributor was responsible for in this lawsuit were published before

Plaintiff further alleges that SDI's copyright policies do not "denote any procedures in place to ensure that no violations occur." This is simply untrue. SDI's copyright policies require numerous safeguards and investigatory procedures prior to publication.[16] Moreover, SDI has taken continued efforts to address copyright infringement since 2019, including disciplining and terminating contributors for violation of copyright policies, and engaging in frequent discussions with contributors regarding the copyright policies and their implementation and enforcement, both formally and informally, in meetings and individual discussions. (CSUF ¶¶ 104 McMillan Decl. ¶¶ 28).

Plaintiff asserts incorrectly that SDI has "been sued 24 times in the past five years." The evidence offered by Defendant shows that the lawsuits occurred over a ten-year period, going back to 2014. (Paladino Decl., Ex. 6). Through its website and social media, SDI publishes thousands of images each year. (CSUF ¶ 82; McMillan Decl. ¶ 30). Many of these lawsuits were brought for alleged infringement of content that was posted on The Source website before SDI's current ownership had formed SDI and commenced operation of The Source website. (CSUF ¶ 106;

---

SDI was informed of the claims in the prior lawsuit, so he could not have been deterred by discipline, as Plaintiff appears to be claiming. (*compare* Monroe Decl., Ex. 2 ("Fat Joe & Big Pun Post" and "Lauryn Hill & Common Post") *with Shihab v. Source Digital, Inc.*, 1:23-cv-07266 (D.E. 1); *see also* (D.E. 28-1)).

[16] Paladino Decl., Ex. 4 ("consult with our creative team to obtain images for online use;" :consult with our editorial and creative team to obtain an image from our database;" "always consult with our attorneys to ensure the proper permissions are granted prior to posting the image[s];" "always review the terms and conditions of the [Creative Commons] license before submitting and always provide proper attribution in accordance with those terms and conditions;" "when searching for images using Creative Commons, make sure you always set your filter to 'use for commercial purposes;'" "[i]f you have any doubt as to whether or not an image is subject to copyright, assume that it is and consult with our attorneys before submitting for posting"). Paladino Decl., Ex. 5 ("[i]f an appropriate image is not available to you, you must contact the relevant publicist for the company, artists representatives, label, network, studio etc., and request permission and access to the images that you wish to use on thesource.com;" "ASK FOR PERMISSION FROM THE SOURCE OF THE PHOTOGRAPH BEFORE POSTING – If you are not sure whether you have permission, contact henry@thenorthstargroup.biz and Katherine@thenorthstargroup.biz").

McMillan Decl. ¶ 32).  Every media publishing business is a target for copyright litigation, and every such business invariably receives frequent accusations regarding the content it publishes, whether meritless or not. (McMillan Decl. ¶ 33).  Many of these lawsuits have been nuisance suits that have been settled at low cost. (McMillan Decl. ¶ 35).  Based on the expense involved in litigating even nuisance claims to judgment, it is almost always more cost-effective and efficient for SDI to settle them, regardless of their merits.  (McMillan Decl. ¶ 31).

Plaintiff's counsel raised similar arguments in a prior case seeking to obtain summary judgment on willfulness, which were rejected by the court. *Shihab*, 2024 WL 3461351, at \*8.  As in *Shihab*, there exist numerous issues of triable fact as to Plaintiff's claims of willfulness.

IV.    SUMMARY JUDGMENT MUST BE DENIED AS TO PLAINTIFF'S VICARIOUS LIABILITY AND CONTRIBUTORY INFRIGEMENT CLAIMS AGAINST NORTHSTAR SOURCE GROUP, LLC

A.    There Exist Genuine Issues of Material Fact As To Plaintiff's Claim for Vicarious Liability

Plaintiff's claim for vicarious liability requires Plaintiff to establish "a causal relationship between the infringing activity and any financial benefit [the] defendant reaps."  *Arista Recs. LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 435 (S.D.N.Y. 2011).  Proving causality requires evidence establishing that users are "drawn," or attracted to a defendant's product because of the infringement, and that defendant received a direct financial benefit from the infringement.  *Id.*; *Ellison v. Robertson*, 357 F.3d 1072, 1078 (9th Cir. 2004).  "[I]n every case, the financial benefit to the defendant must flow directly from the third party's acts of infringement to establish vicarious liability." *Sony Music Ent. v. Cox Commc'ns, Inc.*, 93 F.4th 222, 232 (4th Cir. 2024) (citing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 & n.9 (2005); *In re Frontier Commc'ns Corp.*, 658 B.R. 277, 295 (Bankr. S.D.N.Y. 2024) ("[vicarious liability . . . demands proof that the defendant profits directly from the *acts of infringement* for which it is being held accountable") (emphasis same). "The central question of the 'direct financial benefit' inquiry . . . is

whether the infringing activity constitutes a draw for subscribers, not just an added benefit." *Ellison*, 357 F.3d at 1079.

Plaintiff has not offered any evidence showing that his Photographs "drew" viewers to SDI's Instagram account in manner exceeding normal traffic based on the account's other content. Plaintiff claims that SDI's use of his photographs on its Instagram account gave a direct financial benefit to NSG because it attracted "engagement and followers" to SDI's website, which generates ad-based revenue. Plaintiff has not shown, but only speculated, that use of his Photographs drove any traffic to SDI's website.   There is no direct link from the Instagram Posts containing the Photographs to SDI's website, (CSUF ¶ 93; McMillan Decl. ¶ 16).  SDI does not use the Instagram account to create engagement on the source.com website.  (CSUF ¶ 92; McMillan Decl. ¶ 15).

Plaintiff argues that "increased engagement" and "following" in connection with the Posts increases the value of The Source brand, including the intellectual property owned by NSG. Plaintiff has not provided any valuation of The Source brand or intellectual property, nor shown that any increase in value occurred.  Critically, Plaintiff has not shown that use of his Photographs had any causal effect on the valuation of The Source brand, let alone an increase in such value.  His claim that there is a causal relationship between the value of the Source brand and the use of eleven photographs on social media is based wholly on speculation and attorney argument.  A reasonable jury could very easily find to the contrary.

Courts have denied summary judgment on vicarious liability claims where, as here, the plaintiff has failed to show that infringing content was a sufficient "draw" for consumers that provided a direct benefit to defendant.  *Ellison*, 357 F.3d at 1079 (9th Cir. 2004) (*"*[t]he record lacks evidence that AOL attracted or retained subscriptions because of the infringement or lost subscriptions because of AOL's eventual obstruction of the infringement. Accordingly, no jury could reasonably conclude that AOL received a direct financial benefit from providing access to the

infringing material"); *Adobe Sys. Inc. v. Canus Prods., Inc.*, 173 F. Supp. 2d 1044, 1052–53 (C.D. Cal. 2001) (concluding that the infringing must be "the *main* customer 'draw'").[17] Here, Plaintiff has failed to show that his Photographs were a "draw," and that they provided a "direct financial benefit' to NSG.   At a minimum, there exist triable issues of fact.

Plaintiff claims that NSG "supervised" SDI because it was purportedly involved in drafting and enforcing SDI's copyright policies and reviewing content posted on The Source website and social media.  Plaintiff's basis for this claim is that certain attorneys and contributors who were involved with SDI's content publication used a "NorthStar" email address and a "NorthStar" signature block, so Plaintiff asserts they must have been employees of NSG.  But what Plaintiff deliberately omits in <u>every instance</u>, because it is fatal to his argument, is that the emails and signature blocks reference "The NorthStar Group," not merely "NorthStar." (Paladino Decl., Exs. 5, 10, 11, 12, 14).  The NorthStar Group is not a legal entity, but rather an unincorporated brand name for a group of separate legal entities, which include NSG and SDI, (CSUF ¶ 111; McMillan Decl. ¶ 40), and these individuals used "@thenorthstargroup.biz."  and "The NorthStar Group" in their email addresses and email signature blocks based on the managerial preference for public-facing contractors of entities under The NorthStar Group brand to identify themselves using "The NorthStar Group" brand name. (CSUF ¶ 112; McMillan Decl. ¶ 41).[18]  Plaintiff's counsel is aware

---

[17] Plaintiff cites an out-of-circuit case purporting to establish the "dominant view" in determining a sufficient financial interest, but mis-cites the case.  The reference to a "dominant view" was not a finding of the court, but a reference to what an "observer" (i.e., a legal commentator) had written. Regardless, based on its facts, the *Disney* decision stands for the proposition (which remains unsettled throughout the federal courts) that the financial benefit to a defendant need not be substantial, <u>provided there is proof of some amount of actual sales</u>. *Compare Disney Enterprises, Inc. v. Hotfile Corp.*, 2013 WL 6336286, at *39 (S.D. Fla. Sept. 20, 2013) *with Adobe Sys. Inc.*, 173 F. Supp. 2d at 1052–53.  Here, Plaintiff has not provided any proof equivalent to the "actual sales" in *Disney*, only speculation.

[18] Plaintiff also points to the reference to "NorthStar" in the heading of the Contributor Agreement that SDI's contributors sign upon their engagement.  (Paladino Decl. Ex. 8).  Again, this explicitly references "The NorthStar Group" unincorporated brand.  As indicated by its terms, the agreement

of this, but continues to argue, without basis, that any reference to "NorthStar" is a reference to the legal entity NorthStar Source Group LLC.

None of the individuals in these emails – namely, Kamilah Mitchell, Henry Sherwin, Katherine Baggett, Nicole Duncan-Smith, Amber McKynzie and Candice Samuel, were engaged at any time by NSG. (CSUF ¶¶ 113, 114; McMillan Decl. ¶¶ 42, 43. Plaintiff has not, because he cannot, point to a single document showing that SDI's contributors and attorneys were employed by or acted on behalf of NorthStar Source Group, LLC. Instead, he seeks to confuse the issues by conflating "The NorthStar Group" with "NorthStar Source Group, LLC" and misrepresenting the emails.

Vicarious copyright liability has been described as a variation of the doctrine *of respondeat superior*—a form of strict liability premised on agency. *Shapiro, Bernstein & Co. v. H. L. Green Co.*, 316 F.2d 304, 307 (2d Cir. 1963). For the reasons discussed above, there is no agency relationship between SDI and NSG. NSG is a separate legal entity from SDI, and neither a parent or a subsidiary. (CSUF ¶ 108; McMillan Decl. ¶¶ 37). NSG does not own or operate The Source website or any of its social media accounts, and neither company has any ownership interest in the other. (CSUF ¶¶ 81,108; McMillan Decl. ¶¶ 6, 37). NSG is not authorized to control or direct the development and publication of content on the SDI website and social media. (CSUF ¶ 109; McMillan Decl. ¶ 38). NSG did not supervise SDI's content publication and did not receive any direct financial benefit from SDI's use of the Photographs. At a minimum, numerous issues of triable fact exist.

---

is made between SDI and the contributor. The terms demonstrate that NSG has no involvement in SDI's legal relationship with its independent contractors.

**B.     There Exist Genuine Issues of Material Fact**
**As To Plaintiff's Claim for Contributory Infringement**

NSG is not a contributory infringer because NSG had no knowledge, nor reason to know of the allegedly infringing activity.  NSG is a separate entity that does not own or operate SDI's website or social media. (CSUF ¶¶ 81, 108; McMillan Decl. ¶¶ 6, 37).   NSG was not aware of the allegedly infringing activity until after it had occurred, and did not direct SDI to copy the Photographs.  (CSUF ¶ 110; McMillan Decl. ¶ 39); *see Livnat v. Lavi*, 1998 WL 43221, at *4 (S.D.N.Y. Feb. 2, 1998).   Plaintiff claims that NSG knew or should have known because the Photographs at issue "were widely displayed and published online identifying Monroe as the author and owner," (Pls Mot. at 15-16), but there exist issues of triable fact as to these allegations. *See* discussion *supra* at Section II.A.  As discussed extensively in Section IV.A above, NSG does not supervise the enforcement of SDI's copyright policies or the posting of content on The Source website and social media. (CSUF ¶ 109; McMillan Decl. ¶ 38).   Accordingly, NSG does not have any responsibility to investigate the content published by SDI, and no reason to know that any allegedly infringing activity had occurred concerning the Photographs.

"Participation in the infringement must be 'substantial.' The authorization or assistance must bear a direct relationship to the infringing acts, and the contributory infringer must have acted in concert with the direct infringer." *Livnat*, 1998 WL 43221, at *3.  For the same reasons discussed above, there has been no showing that NSG participated in the allegedly infringing acts, let alone "substantial" participation, conducted "in concert with" SDI, and at a minimum, there exist issues of triable fact.

**CONCLUSION**

Plaintiff's summary judgment motion should be denied in its entirety, and the case should proceed to trial.

25

Dated: August 9, 2024                           Respectfully submitted,


By: /s/ Matthew Abbott
THE MCMILLAN FIRM
240 W. 35th Street, Suite 405
New York, NY 10001
Tel: (646) 559-8314
matthew@thenorthstargroup.biz

*Attorneys for Defendants Source Digital, Inc.*
*and NorthStar Source Group, LLC*