**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| T. ERIC MONROE, | |
| Plaintiff, | Civil Action No. 1:23-cv-06220-DEH |
| v. | |
| NORTHSTAR SOURCE GROUP, LLC;<br>SOURCE DIGITAL, INC., and DOES 1-10 | |
| Defendants. | |

TO THE HONORABLE COURT, ALL PARTIES, AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT, pursuant to Rule 56.1 of the Local Civil Rules of the Southern District of New York, Defendants Source Digital, Inc. ('SDI') and NorthStar Source Group, LLC ('NSG') (collectively, "Defendants"), respectfully submit this Counter-Statement of Material Facts in opposition to Plaintiff's Motion for Summary Adjudication and requests that the motion be denied.

| Plaintiff's Undisputed Facts | Opposing Party's Response and Basis |
|---|---|
| 1. Defendant, The Source Digital, Inc. ("The Source") controls, owns, and operates the commercial Instagram page with username "@thesource" located at URL *www.instagram.com/thesource*. The Instagram uses The Source's original logo and branding and is verified.<br><br>Declaration of Mackenzie Paladino ("Paladino Decl.") ¶¶ 6-8, 13, Exhs. 7-9, 14 at 24:10-13, 25:5-13. | Disputed as to the characterization of SDI's use of the @thesource Instagram account as "commercial." SDI does not generate any revenue from contributor posts published on its Instagram account, including the posts containing the allegedly infringing Photographs in this case, and does not get a financial benefit from engagement on the account.<br><br>McMillan Decl. ¶¶ 12, 13, 14, Paladino Decl., Ex. 9 at 79:20 – 80:10. |
| 2. Defendant, Northstar Source Group, Inc. ("Northstar") (collectively with Source, "Defendants"), is a for-profit company that is a business affiliate of Source.<br><br>Paladino Decl. ¶ 13, Exh. 9 at 63:14-19. | Disputed. "Northstar Source Group, Inc." is not a defendant in this case.<br><br>Disputed as to the intended characterization of NorthStar Source Group, LLC ("NSG") as a "business affiliate" of Source. Neither company has any ownership interest in the other, nor are they partners for performing services. SDI is a licensee of NSG.<br><br>McMillan Decl. ¶¶ 36, 37 |

| | |
|---|---|
| 3.  Northstar owns the intellectual property associated with Source. Northstar employs attorneys that advises, monitors, and oversees the Source employees, interns, and independent contractors.<br><br>Paladino Decl. ¶ 13, Exh. 9 at 19:2-12, 20:15-21:13, 23:9-16, 61:15-62:4, 63:14-64:2, 64:19-22. | Disputed. Reference to "NorthStar" is deliberately vague and ambiguous, disputed as to Plaintiff's improper conflation of "The NorthStar Group" with "NorthStar Source Group LLC." "The NorthStar Group" is not a legal entity, but an unincorporated brand name used in connection with a group of unrelated but similarly aligned companies that include Source Digital, Inc. and NorthStar Source Group LLC.<br><br>McMillan Decl. ¶ 40.<br><br>Disputed. The attorneys who advise on copyright policies and other issues related to Source Digital, Inc. are not employees of or otherwise engaged by NSG. They provide advice and consultation to SDI's contributors in regard to issues of legal significance that arise in connection with content produced for the Source website and social media accounts.<br><br>McMillan Decl. ¶¶ 42, 44.<br><br>Disputed. Certain independent contractors within The NorthStar Group with public-facing responsibilities are required by management to use email addresses, email signature blocks and letterhead reflecting the trade name "The NorthStar Group" (e.g., @thenorthstargroup.biz, not "@northstar.biz). Such use has no bearing on which entity has engaged a particular individual.<br><br>McMillan Decl. ¶¶ 40-43<br><br>Henry Sherwin, Katherine Baggett, Kamilah Mitchell, Melissa Sanchez and Matthew Abbott are all present or former attorneys and independent contractors. None of them were ever engaged by NSG.<br><br>McMillan Decl. ¶¶ 42, 43.<br><br>NSG does not direct or control SDI's independent contractors.<br><br>McMillan Decl. ¶ 38 |
| 4.  Monroe, known professionally as "T. Eric Monroe", is the author of the photographs shown in the First Amended Complaint and Exhibit 1 attached to the Monroe    Declaration    ("Subject Photographs").<br><br>Declaration of T. Eric Monroe ("Monroe Decl.") Decl. ¶ 2-3, Exh. 1. | Undisputed. |
| 5.    Monroe's portfolio includes iconic photographs of hip-hop artists created in the 1990s, like the images at issue here.<br><br>Monroe Decl. ¶ 5, Exh. 1. | Disputed. The cited evidence refers only to the photographs at issue here, not to Plaintiff's portfolio. Reference to "iconic" in Plaintiff's declaration refers to the artists, not the photographs. |
| 6.  Monroe obtained      copyright registrations for the Subject Photographs with a registration dates of April 13, 2023, November 28, 2017, March 28, 2017 and March 20, 2017.<br><br>Monroe Decl. ¶ 7, Exh. 3. | Disputed. Plaintiff produced a single registration certificate and what appear to be three printouts from the copyright.gov website that reference other registrations. The printout from the Copyright Office website referencing registration date April 13, 2023 does not identify which of the "Subject Photographs" were covered by the registration, and Plaintiff has not produced any deposit copies or |

| | |
|---|---|
| | other registration materials. While a number of the photographs do not appear to be covered in the other registrations, there is no evidence that they are covered in the April 13, 2023 registration referenced in the website printout.<br><br>Monroe Decl. ¶ 5, Ex. 3; Abbott Decl. ¶ 7. |
| 7.       Monroe is the sole owner of all rights, title, and interest in the Subject Photographs.<br><br>Monroe Decl. ¶ 8. | Undisputed. |
| 8.  On December 8, 2020, Defendants exploited Monroe's photograph depicting The Fugees and Nas by uploading a copy, reproduction, or derivative of the Photograph to its Instagram page.<br><br>Monroe Decl. ¶ 9, Exh. 2. | Disputed as to the allegations regarding NSG's participation.   The development and publication of content on the SDI website and social media is performed by contributors engaged by SDI, not NSG. Defendants also incorporate by reference their response, objections and citations in SUF ¶ 3, above.<br><br>McMillan Decl. ¶¶ 37, 38, 39<br><br>Disputed as to the characterization that SDI "exploited" the photograph.  Defendants incorporate by reference their response, objections and citations in SUF ¶ 1, above. |
| 9.  On May 4, 2021, Defendants  exploited Monroe's photograph of Lauryn Hill and D'Angelo by uploading a copy, reproduction, or derivative of the photograph to its Instagram page.<br><br>Monroe Decl. ¶ 9, Exh. 2. | Disputed as to the allegations regarding NSG's participation.   The development and publication of content on the SDI website and social media is performed by contributors engaged by SDI, not NSG. Defendants also incorporate by reference their response, objections and citations in SUF ¶ 3, above.<br><br>McMillan Decl. ¶¶ 37, 38, 39<br><br>Disputed as to the characterization that SDI "exploited" the photograph.  Defendants incorporate by reference their response, objections and citations in SUF ¶ 1, above. |
| 10.  On November 5, 2021, Defendants exploited Monroe's photograph of the Wu Tang Clan by uploading a copy, reproduction, or derivative of the photograph to its Instagram page.<br><br>Monroe Decl. ¶ 9, Exh. 2. | Disputed as to the allegations regarding NSG's participation.   The development and publication of content on the SDI website and social media is performed by contributors engaged by SDI, not NSG. Defendants also incorporate by reference their response, objections and citations in SUF ¶ 3, above.<br><br>McMillan Decl. ¶¶ 37, 38, 39<br><br>Disputed as to the characterization that SDI "exploited" the photograph.  Defendants incorporate by reference their response, objections and citations in SUF ¶ 1, above. |
| 11.       On    July    23,    2020,    Defendants exploited Monroe's photograph of Nasty Nas by uploading a  copy,  reproduction,  or derivative of the photograph to its Instagram page.<br><br>Monroe Decl. ¶ 9, Exh. 2. | Disputed.  Plaintiff's Exhibit 2 does not contain any post dated July 23, 2020 that contains a photograph of Nas.<br><br>Disputed as to the allegations regarding NSG's participation.   The development and publication of content on the SDI website and social media is performed by contributors engaged by SDI, not NSG. Defendants also incorporate by reference their response, objections and citations in SUF ¶ 3, above.<br><br>McMillan Decl. ¶¶ 37, 38, 39<br><br>Disputed as to the characterization that SDI "exploited" the |

| | |
|---|---|
| | photograph.  Defendants incorporate by reference their response, objections and citations in SUF ¶ 1, above. |
| 12.  On March 16, 2021, Defendants exploited Monroe's photograph of Nasty Nas by uploading a copy, reproduction, or derivative of the photograph to its Instagram page.<br><br>Monroe Decl. ¶ 9, Exh. 2. | <u>Disputed</u> as to the allegations regarding NSG's participation.  The development and publication of content on the SDI website and social media is performed by contributors engaged by SDI, not NSG.  Defendants also incorporate by reference their response, objections and citations in SUF ¶ 3, above.<br><br>McMillan Decl. ¶¶ 37, 38, 39<br><br><u>Disputed</u> as to the characterization that SDI "exploited" the photograph.  Defendants incorporate by reference their response, objections and citations in SUF ¶ 1, above. |
| 13.  On March 24, 2021, Defendants exploited Monroe's photograph of Ol Dirty Bastard by uploading a copy, reproduction, or derivative of the photograph to its Instagram page.<br><br>Monroe Decl. ¶ 9, Exh. 2. | <u>Disputed</u> as to the allegations regarding NSG's participation.  The development and publication of content on the SDI website and social media is performed by contributors engaged by SDI, not NSG.  Defendants also incorporate by reference their response, objections and citations in SUF ¶ 3, above.<br><br>McMillan Decl. ¶¶ 37, 38, 39<br><br><u>Disputed</u> as to the characterization that SDI "exploited" the photograph.  Defendants incorporate by reference their response, objections and citations in SUF ¶ 1, above. |
| 14.  On April 2, 2020, Defendants exploited Monroe's photograph of BIG and K-Ci by uploading a copy, reproduction, or derivative of the photograph to its Instagram page.<br><br>Monroe Decl. ¶ 9, Exh. 2. | <u>Disputed</u> as to the allegations regarding NSG's participation.  The development and publication of content on the SDI website and social media is performed by contributors engaged by SDI, not NSG.  Defendants also incorporate by reference their response, objections and citations in SUF ¶ 3, above.<br><br>McMillan Decl. ¶¶ 37, 38, 39<br><br><u>Disputed</u> as to the characterization that SDI "exploited" the photograph.  Defendants incorporate by reference their response, objections and citations in SUF ¶ 1, above. |
| 15.  On January 5, 2023, Defendants exploited Monroe's photograph of Doctor Dre and Ed Lover by uploading a copy, reproduction, or derivative of the photograph to its Instagram page.<br><br>Monroe Decl. ¶ 9, Exh. 2. | <u>Disputed</u>.  The image of the post in Plaintiff's Exhibit 2 does not reflect that the post was published on January 5, 2023.<br><br><u>Disputed</u> as to the allegations regarding NSG's participation.  The development and publication of content on the SDI website and social media is performed by contributors engaged by SDI, not NSG.  Defendants also incorporate by reference their response, objections and citations in SUF ¶ 3, above.<br><br>McMillan Decl. ¶¶ 37, 38, 39<br><br><u>Disputed</u> as to the characterization that SDI "exploited" the photograph.  Defendants incorporate by reference their response, objections and citations in SUF ¶ 1, above. |
| 16.  On April 19, 2022, Defendants exploited Monroe's photograph of Big Pun and Fat Joe by uploading a copy, reproduction, or derivative of the photograph to its Instagram page.<br><br>Monroe Decl. ¶ 9, Exh. 2. | <u>Disputed</u> as to the allegations regarding NSG's participation.  The development and publication of content on the SDI website and social media is performed by contributors engaged by SDI, not NSG.  Defendants also incorporate by reference their response, objections and citations in SUF ¶ 3, above.<br><br>McMillan Decl. ¶¶ 37, 38, 39<br><br><u>Disputed</u> as to the characterization that SDI "exploited" the photograph.  Defendants incorporate by reference their response, |

| | objections and citations in SUF ¶ 1, above. |
|---|---|
| 17.    On November 12, 2021, Defendants exploited Monroe's photograph of Lauryn Hill by uploading a copy, reproduction, or derivative of the photograph to its Instagram page.<br><br>Monroe Decl. ¶ 9, Exh. 2. | <u>Disputed</u> as to the allegations regarding NSG's participation.   The development and publication of content on the SDI website and social media is performed by contributors engaged by SDI, not NSG. Defendants also incorporate by reference their response, objections and citations in SUF ¶ 3, above.<br><br>McMillan Decl. ¶¶ 37, 38, 39<br><br><u>Disputed</u> as to the characterization that SDI "exploited" the photograph.   Defendants incorporate by reference their response, objections and citations in SUF ¶ 1, above. |
| 18. On March 17, 2021, Defendants exploited Monroe's photograph of Guru by uploading a copy, reproduction, or derivative of the photograph to its Instagram page.<br><br>Monroe Decl. ¶ 9, Exh. 2. | <u>Disputed</u> as to the allegations regarding NSG's participation.   The development and publication of content on the SDI website and social media is performed by contributors engaged by SDI, not NSG. Defendants also incorporate by reference their response, objections and citations in SUF ¶ 3, above.<br><br>McMillan Decl. ¶¶ 37, 38, 39<br><br><u>Disputed</u> as to the characterization that SDI "exploited" the photograph.   Defendants incorporate by reference their response, objections and citations in SUF ¶ 1, above. |
| 19. On February 6, 2023, Defendants exploited Monroe's photograph of Beyonce by uploading a   copy, reproduction,   or derivative of the photograph to its Instagram page               (collectively        with¶¶ 7-17,        the "Infringing Uses").<br><br>Monroe Decl. ¶ 9, Exh. 2. | <u>Disputed</u>.  The image of the post in Plaintiff's Exhibit 2 does not reflect that the post was published on February 6, 2023.<br><br><u>Disputed</u> as to the allegations regarding NSG's participation.   The development and publication of content on the SDI website and social media is performed by contributors engaged by SDI, not NSG. Defendants also incorporate by reference their response, objections and citations in SUF ¶ 3, above.<br><br>McMillan Decl. ¶¶ 37, 38, 39<br><br><u>Disputed</u> as to the characterization that SDI "exploited" the photograph.   Defendants incorporate by reference their response, objections and citations in SUF ¶ 1, above. |
| 20.    Sometime   in   late   2022,   Monroe discovered the Infringing Uses identified in paragraphs ¶¶ 7-17.<br>Monroe Decl. ¶ 10. | <u>Disputed</u> as to the characterization of uses as "infringing."  Attorney argument is not evidence.<br><br><u>Disputed</u>.  Plaintiff alleges that the "Dr. Dre & Ed Lover Post" and the "Beyonce Post" were both posted in 2023, therefore Plaintiff could not have discovered them in "late 2022." |
| 21.  On January 12, 2023, a cease-and- desist was sent to Defendants for the Infringing Uses   identified   in paragraphs 7-17.<br><br>Paladino Decl. ¶ 4, Exh. 1. | <u>Disputed</u> as to the characterization of uses as "infringing."  Attorney argument is not evidence.<br><br><u>Disputed</u>.  Misrepresents the document.  On January 12, 2023, a cease and desist letter was sent to "The NorthStar Group d/b/a Source." |
| 22.    On February 8, 2023, a cease-and- desist letter was sent to Defendants for the Infringing Uses identified in paragraph 18.<br><br>Paladino Decl. ¶ 4, Exh. 1. | <u>Disputed</u> as to the characterization of uses as "infringing."  Attorney argument is not evidence.<br><br><u>Disputed</u>.  Misrepresents the document.  On February 8, 2023, a cease and desist letter was sent to "The NorthStar Group d/b/a Source." The letter did not reference the use identified in paragraph 18. |

| | |
|---|---|
| 23.    The Infringing Uses feature copies or reproductions of the Subject Photographs that are slightly cropped.<br><br>Monroe Decl. ¶ 12. | <u>Disputed</u> as to the characterization of uses as "infringing."  Attorney argument is not evidence.<br><br><u>Disputed</u>.  The posts do not appear to be cropped when compared with the "Subject Photographs" that are defined and identified as the "original photographs" in Plaintiff's First Amended Complaint.<br><br>Dkt. Entry 8 at ¶ 12; Dkt . Entry 8-1 |
| 24.    The Infringing Uses do not contain Monroe's signature or copyright management information that was featured on the original Subject Photographs widely displayed and distributed on  Monroe's website and public profiles.<br><br>Monroe Decl. ¶¶ 12, 13, Exhs. 1, 2. | <u>Disputed</u> as to the characterization of uses as "infringing."  Attorney argument is not evidence.<br><br><u>Disputed</u>.  The "Subject Photographs" that are defined and identified as the "original photographs" in Plaintiff's First Amended Complaint do not contain Plaintiff's signature or copyright management information.  Plaintiff has not provided any evidence that versions of his photographs stamped with his signature or copyright management information were displayed online prior to the posts by SDI, and there is evidence that there were versions of his Photographs available that were not stamped with any signature or CMI.<br><br>Dkt. Entry 8 at ¶ 12, Dkt . Entry 8-1.; Abbott Decl. ¶¶ 10, 11, Exs, A, B. |
| 25.    If a Source employee, intern, or independent contractor has a question about the publication of a third parties photograph on Source's Instagram or websites, they must contact Northstar employees, Henry Sharwinn or Kamliah Mitchell, for review.<br><br>Paladino Decl. ¶¶ 8-9, Exhs. 4, 5. | <u>Disputed</u>.  The attorneys who advise on copyright policies and other issues related to Source Digital, Inc. are not employees of or otherwise engaged by NorthStar Source Group LLC.  They provide advice and consultation to SDI's contributors in regard to issues of legal significance that arise in connection with content produced for the Source website and social media accounts.  Defendants also incorporate by reference their response, objections and citations in SUF ¶ 3, above.<br><br>McMillan Decl. ¶¶ 42, 44.<br><br><u>Disputed.</u> Reference to "NorthStar" is deliberately vague and ambiguous, disputed as to Plaintiff's improper conflation of "The NorthStar Group" with "NorthStar Source Group LLC."  "The NorthStar Group" is not a legal entity, but an unincorporated brand name used in connection with a group of unrelated but similarly aligned companies that include Source Digital, Inc. and NorthStar Source Group LLC.<br><br>McMillan Decl. ¶ 40. |
| 26. The persons overseeing and communicating directly with Source content creators and independent contractors, controlling and directing Source content creators and independent contractors are employed by Northstar and communicate with Source interns and independent contractors using  an   email  ending  in  "@northstar.biz."<br><br>Paladino Decl. ¶¶ 8, 15-16, Exhs. 5, 10, 11. | <u>Disputed.</u> Reference to "NorthStar" is deliberately vague and ambiguous, disputed as to Plaintiff's improper conflation of "The NorthStar Group" with "NorthStar Source Group LLC."  "The NorthStar Group" is not a legal entity, but an unincorporated brand name used in connection with a group of unrelated but similarly aligned companies that include Source Digital, Inc. and NorthStar Source Group LLC.<br><br>McMillan Decl. ¶ 40.<br><br>Henry Sherwin, Katherine Baggett, Kamilah Mitchell, Amber McKynzie, Candice Samuel and Nicole Duncan-Smith were all independent contractors, none of whom were engaged by NSG.<br><br>McMillan Decl. ¶ 42-44. |

| | |
|---|---|
| | <u>Disputed</u>. NSG does not direct or control SDI's independent contractors.<br><br>McMillan Decl. ¶¶ 7, 38, 39.<br><br><u>Disputed</u>. Certain independent contractors within The NorthStar Group with public-facing responsibilities are required by management to use email addresses, email signature blocks and letterhead reflecting the trade name "The NorthStar Group" (e.g., @thenorthstargroup.biz). Such use has no bearing on which entity has engaged a particular individual. In fact, none of these independent contractors are engaged by NSG.<br><br>McMillan Decl. ¶¶ 41-43<br><br><u>Disputed</u>. The email domain "@northstar.biz" was never used and misrepresents the documents. The domain used is "@thenorthstargroup.biz." |
| 27.    Monroe filed his Complaint on July 19, 2023, and his Amended Complaint on September 6 2023, alleging copyright infringement,     secondary copyright infringement, and violations of § 1202 against Defendants.<br><br>Dkt. Nos. 1, 8; Paladino Decl. ¶ 3. | <u>Disputed</u>. Plaintiff's original Complaint names "The NorthStar Group Inc." as the defendant. When Plaintiff filed his First Amended Complaint, he removed "The NorthStar Group Inc." and added SDI and NSG.<br><br>*Compare* Dkt. Entry 1 *with* Dkt Entry 8 |
| 28.    Monroe previously worked as a photo editor for The Source Magazine when beginning his career as a photographer.<br><br>Monroe Decl. ¶ 3. | <u>Undisputed</u>. |
| 29.  All internal company policies provided to content creators and independent contractors on behalf of Source are sent by employees with Northstar email addresses and on Northstar letterhead.<br><br>Paladino Decl. ¶¶ 7-8, 12, 19, Exhs. 4-5, 8, 14. | <u>Disputed.</u>  The cited evidence consists of a few emails and does not support the assertion that "all company policies" are sent in this manner.<br><br><u>Disputed</u>. The attorneys who advise on copyright policies and other issues related to Source Digital, Inc. are not employees of or otherwise engaged by NorthStar Source Group LLC. They provide advice and consultation to SDI's contributors in regard to issues of legal significance that arise in connection with content produced for the Source website and social media accounts.<br><br>McMillan Decl. ¶¶ 42, 44.<br><br><u>Disputed.</u> Reference to "NorthStar" is deliberately vague and ambiguous, disputed as to Plaintiff's improper conflation of "The NorthStar Group" with "NorthStar Source Group LLC." "The NorthStar Group" is not a legal entity, but an unincorporated brand name used in connection with a group of unrelated but similarly aligned companies that include Source Digital, Inc. and NorthStar Source Group LLC. No reference to NorthStar Source Group appears in the documents cited by Plaintiff.<br><br>McMillan Decl. ¶ 40.<br><br><u>Disputed</u>. Certain independent contractors within The NorthStar |

| | |
|---|---|
| | Group with public-facing responsibilities are required by management to use email addresses, email signature blocks and letterhead reflecting the trade name "The NorthStar Group" (e.g., @thenorthstargroup.biz). Such use has no bearing on which entity has engaged a particular individual. In fact, none of these independent contractors are engaged by NSG.<br><br>McMillan Decl. ¶¶ 41-43<br><br>Henry Sherwin, Katherine Baggett, Kamilah Mitchell, Amber McKynzie, Candice Samuel and Nicole Duncan-Smith were all independent contractors, none of whom were engaged by NSG.<br><br>McMillan Decl. ¶ 42, 43. |
| 30.    Defendants'    Instagram    account, located at *www.instagram.com/thesource* is publicly accessible and verified.<br><br>Paladino Decl. ¶ 5, Exh. 2. | Disputed. SDI, not NSG, services and operates the @thesource Instagram account, and NSG does not have any ownership interest in SDI.<br><br>McMillan Decl. ¶¶ 6, 37 |
| 31. The Subject Photographs were widely displayed and disseminated to the public before 2021 through several publicly available online platforms, including my website, which identified "T. Eric Monroe" as the author and owner of the Subject Photographs.<br><br>Monroe Decl. ¶ 13, 15, Exh. 1. | Disputed. The cited evidence does not demonstrate that the photographs were "widely displayed and disseminated . . . before 2021."<br><br>Disputed. The "Subject Photographs" identified in Plaintiff's First Amended Complaint are not the same versions of the "Subject Photographs" Plaintiff asserts in this motion.<br><br>*Compare* Dkt. Entry 8 at ¶ 12, Dkt . Entry 8-1 *with* Monroe Decl., Ex. 1. |
| 32.    Monroe has publicly displayed and distributed the Subject Photographs with his signature mark (@tdoteric) inside a red box.<br><br>Monroe Decl. ¶ 13, Exh. 1. | Disputed. The cited exhibit merely shows certain versions of the photographs with the @tdoteric mark superimposed, it does not establish whether or when they were publicly displayed or distributed.<br><br>Disputed. The "Subject Photographs" identified in Plaintiff's First Amended Complaint are not the same versions of the "Subject Photographs" Plaintiff asserts in this motion, and do not contain the "@tdoteric" mark.<br><br>*Compare* Dkt. Entry 8 at ¶ 12, Dkt . Entry 8-1 *with* Monroe Decl., Ex. 1. |
| 33.    Monroe consistently takes action to protect the    exclusive    rights    in    his photographs.<br><br>Monroe Decl. ¶ 4 | Disputed. Although Plaintiff claims not to have authorized any online uses, there are many copies of Plaintiff's Photographs displayed online.<br><br>Abbott Decl., Ex. A. |
| 34.    The Source has been sued 24 times in the    past    five    years    for    copyright infringement.<br><br>Paladino Decl. ¶ 9, Exh. 6. | Disputed. Misrepresents the evidence, which lists lawsuits going back 10 years, not 5 years. |

| | |
|---|---|
| 35.     Source was recently found liable for similar infringing conduct.<br><br>*Jamil Gulmann Shihab v. Source Digital, Inc. et al.*, 2024 WL 3461351, at *5 (S.D.N.Y. July 18, 2024). | <u>Disputed</u>.  Misrepresents the decision.  Summary judgment was denied to Plaintiff on willfulness and violations of the DMCA under similar facts. |
| 36.  The Subject Photographs are highly valuable because many of the subjects in the Subject Photographs are now deceased and therefore unable to be recreated.<br><br>Monroe Decl. ¶ 6. | <u>Disputed.</u>  Of the nineteen individuals depicted in the photographs, only four are deceased – Big Pun, Guru, Ol' Dirty Bastard and Notorious B.I.G, who appear in five of the eleven alleged photographs.   Nor has Plaintiff submitted any evidence demonstrating the alleged high value of these five photographs.<br><br>Abbott Decl. ¶ 8 |
| 37.     Monroe never authorized or licensed Defendants to use the Subject Photographs in any way.<br><br>Monroe Decl. ¶ 14. | <u>Undisputed</u>. |
| 38.     Monroe was never contacted by the Defendants before the Infringing Uses.<br><br>Monroe Decl. ¶ 17. | <u>Disputed</u> as to the characterization of uses as "infringing."  Attorney argument is not evidence. |
| 39.     The Infringing Uses were carried out by an independent contractor authorized to access its social media accounts.<br><br>Paladino Decl. ¶ 10, Exh. 7. | <u>Disputed</u> as to the characterization of uses as "infringing."  Attorney argument is not evidence.  Reference to "its" social media accounts is vague and ambiguous, the @thesource Instagram account is operated by SDI and its contributors, and the posts were published by SDI's contributors.<br><br>McMillan Decl. ¶¶ 8, 37, 38. |
| 40.     The Source Instagram page is used for commercial purposes.<br><br>Paladino Decl. ¶¶ 5-7, 16, Exhs. 2-5, 11. | <u>Disputed</u> as to the characterization of SDI's use of the @thesource Instagram account as "commercial." SDI does not generate any revenue from contributor posts published on its Instagram account, including the posts containing the allegedly infringing Photographs in this case, and does not get a financial benefit from engagement on the account.<br><br>McMillan Decl. ¶¶ 12, 13, 14, Paladino Decl., Ex. 9 at 79:20 – 80:10. |
| 41.     Defendants publish photographs on its Instagram page to boost user engagement and      drive      users      to      its      website, *www.thesource.com.*<br><br>Paladino Decl. ¶ 13, Exh. 9 at 77:19-79:25, 80:11-81:2. | <u>Disputed</u> as to the allegations regarding NSG's participation.   The development and publication of content on the SDI website and social media is performed by contributors engaged by SDI, not NSG.  Defendants also incorporate by reference their response, objections and citations in SUF ¶ 3, above.<br><br>McMillan Decl. ¶¶ 6, 7, 8, 37, 38<br><br><u>Disputed</u>.  The testimony cited does not support the assertion that SDI publishes photographs in order to drive users to its website.  The testimony states that SDI's Instagram posts are used to increase engagement on Instagram, not on the website, and that there's no direct link from the Posts to the website.<br><br>Paladino Decl., Exh. 9 at 80:11-81:2; McMillan Decl. ¶ 16 |
| 42.     Defendants earn advertising revenue from advertisements          on     its     website, *www.thesource.com.*<br><br>Paladino Decl. ¶¶ 7, 13, Exhs. 4, 9 at 17:10-21. | <u>Disputed</u>.  Misrepresents the testimony, which states that SDI earns revenue from advertising on the source.com website. |

| | |
|---|---|
| 43. Defendants use the Source's Instagram for promotion and marketing on occasion.<br><br>Paladino Decl. ¶ 13, Exh. 9 at 33:20-34:3. | Disputed. The @thesource Instagram account is operated by SDI and its contributors, not by NSG. Defendants also incorporate by reference their response, objections and citations in SUF ¶ 3, above.<br><br>McMillan Decl. ¶¶ 6, 37<br><br>Disputed. Reference to 'on occasion' is vague and ambiguous. SDI has only used the Instagram account for promotional purposes twice, years ago, in connection with a specific promotional campaign, for which the content was entirely provided by the promotion partner and was entirely unrelated to content posted by contributors. SDI does not run advertisements on photographic posts on the @thesource Instagram account.<br><br>McMillan Decl. ¶¶ 13, 18 |
| 44. Source's Instagram page contains a link that directs users to its website, *www.thesource.com*.<br><br>Paladino Decl. ¶¶ 5, 13, Exh. 2, 9 at 17:23-18:18. | Disputed. Reference to "Instagram page" is vague and ambiguous. The cited testimony states that there are no links to the website from the Post pages on the @thesource Instagram account. The link is found on the main "Profile page" for the account.<br><br>McMillan Decl. ¶ 17; Paladino Decl., Ex. 2. |
| 45. Defendants have purchased licenses from other photographers to display or publish their work on Source's Instagram and affiliated websites.<br><br>Paladino Decl. ¶ 13, Exh. 9 at 34:7-20, 87:15-21; Id. ¶ 17, Exh. 12. | Disputed. The @thesource Instagram account is operated by SDI and its contributors, not by NSG. Plaintiff's evidence shows that SDI, not NSG, enters into licenses with photographers. Defendants also incorporate by reference their response, objections and citations in SUF ¶ 3, above.<br><br>McMillan Decl. ¶¶ 6, 7, 8, 37; Paladino Decl., Ex. 12 |
| 46. Source is a magazine of hip hop, music, culture, and politics and self- identifies as the world's longest running rap periodical.<br><br>Paladino Decl. ¶¶ 5-6, Exhs. 2-3; Id. ¶ 13, Exh. 9 at 87:4-8. | Disputed. The Source self-identifies as the longest running hip hop publication.<br><br>McMillan Decl. ¶ 4. |
| 47. Defendants copyright policy, written and enforced by Northstar, advises content creators for Source to only use images from certain websites when publishing content to Source's webpages and social media.<br><br>Paladino Decl. ¶¶ 7, 8, 16, Exhs. 4, 5, 11. | Disputed as to the allegations regarding NSG's participation. The development and publication of content on the SDI website and social media is performed by contributors engaged by SDI, not NSG. Defendants also incorporate by reference their response, objections and citations in SUF ¶ 3, above.<br><br>McMillan Decl. ¶¶ 6, 7, 8, 37.<br><br>Disputed. The attorneys who advise on copyright policies and other issues related to Source Digital, Inc. are not employees of or otherwise engaged by NorthStar Source Group LLC. They provide advice and consultation to SDI's contributors in regard to issues of legal significance that arise in connection with content produced for the Source website and social media accounts. Defendants also incorporate by reference their response, objections and citations in SUF ¶ 3, above.<br><br>McMillan Decl. ¶¶ 42, 44.<br><br>Henry Sherwin, Katherine Baggett, Kamilah Mitchell, Amber McKynzie, Candice Samuel and Nicole Duncan-Smith were all |

| | independent contractors, none of whom were engaged by NSG.<br><br>McMillan Decl. ¶ 42, 43, 44.<br><br>Disputed.  Misrepresents the evidence.  SDI's copyright policies state that SDI contributors should use either (i) images from the licensed Daniel Garcia database; or (ii) images from the licensed Shutterstock database, or (iii) images owned or licensed by The Source, or (iv) images which have been approved for use by an authorized third party, or (v) images available for use pursuant to a Creative Commons license.  The copyright policy also provides that uses may be permitted in specific circumstances under the fair use doctrine.<br><br>Paladino Decl. Ex. 4 ,  12, 14 |
|---|---|
| 48.  Source's copyright policy states "some may argue that certain images are being used for commercial purposes on our sites because we collect advertising revenue, and we are not free to use any images simply because we are a news organization."<br><br>Paladino Decl. ¶ 7, Exh. 4. | Undisputed. |
| 49.  Source claims to be a sophisticated organization that respects artists rights by putting in policies, procedures, has licensing systems, and work with photographers.<br><br>Paladino Decl. ¶ 13, Exh. 9 at 87:9-14. | Disputed.  The cited testimony does not reference any claim by SDI that it is a "sophisticated organization." |
| 50.      Source      gains      notoriety      and engagement by posting images that attract users.<br><br>Paladino Decl. ¶ 13, Exh. 9 at 79:3-14, 80:11-25. | Disputed.  Vague and ambiguous; misrepresents and mischaracterizes the testimony. There is no mention of "notoriety," and no reference to "posting images" to "attract users."  The testimony also states that posting images can also cause negative engagement and loss of followers, and that the Instagram page is used to increase engagement on Instagram, not on the Source website.<br><br>Paladino Decl. ¶ 13, Exh. 9 at 81:13 – 82:8 |
| 51.      Increased      user      engagement      on Source's Instagram page can lead to increase in website views.<br><br>Paladino Decl. ¶ 13, Exh. 9 at 80:11-25. | Disputed.  The cited testimony does not support the alleged fact.  The testimony states that "very rarely will a post such as the one in question here impact anything related to the website because there's no connection on the page of the picture to the website." The testimony also states that the Instagram account is used to create engagement on Instagram, not on the Source website.<br><br> Paladino Decl. Exh. 9 at  80:17-81:2; *see also* Ex. 9 at 80:11 – 16;  McMillan Decl. ¶ 16. |
| 52.      The Subject Photographs are not featured on any of the websites authorized by the copyright policy.<br><br>Monroe Decl. ¶ 18. | Undisputed. |
| 53.      Defendants copyright policy does not include any  disciplinary  or  enforcement procedures. | Disputed.  As part of its policies, SDI has disciplined and terminated its contributors for violating its copyright policies, and where appropriate, has taken legal action against more egregious contributors. |

| | |
|---|---|
| Paladino Decl. ¶¶ 7, 12, Exhs. 4, 8. | McMillan Decl. ¶¶ 27, 28.<br><br>Disputed as to the allegations regarding NSG's participation. The development and publication of content on the SDI website and social media is performed by contributors engaged by SDI, not NSG. Defendants also incorporate by reference their response, objections and citations in SUF ¶ 3, above.<br><br>McMillan Decl. ¶¶ 6, 7, 8, 37.<br><br>Disputed. The attorneys who advise on copyright policies and other issues related to Source Digital, Inc. are not employees of or otherwise engaged by NorthStar Source Group LLC. They provide advice and consultation to SDI's contributors in regard to issues of legal significance that arise in connection with content produced for the Source website and social media accounts. Defendants also incorporate by reference their response, objections and citations in SUF ¶ 3, above.<br><br>McMillan Decl. ¶¶ 42, 44. |
| 54. Defendants have not produced any documents indicating that any employee, intern, or independent contractor acting as a content creator was disciplined for violating the copyright policy.<br><br>Paladino Decl. ¶ 11. | Disputed as to the implication that SDI has never disciplined or terminated any of its contributors. Plaintiff never served any document request on SDI seeking production of disciplinary or termination records for SDI's contributors. Plaintiff's counsel is well aware that SDI has terminated contributors because SDI has disclosed such information in a prior case,<br><br>Abbott Decl. ¶ 9; McMillan Decl. ¶ 27, 28. |
| 55. Northstar emailed Source's team multiple times about continued copyright infringement problems.<br><br>Paladino Decl. ¶¶ 8, 15, 19; Exhs. 5, 10, 14. | Disputed: The cited exhibits do not support the assertion that SDI's contributors were emailed "multiple times about continued copyright infringement." The emails set forth SDI's policies concerning use of photographs.<br><br>Disputed. The attorneys who advise on copyright policies and other issues related to Source Digital, Inc. are not employees of or otherwise engaged by NorthStar Source Group LLC. They provide advice and consultation to SDI's contributors in regard to issues of legal significance that arise in connection with content produced for the Source website and social media accounts. Defendants also incorporate by reference their response, objections and citations in SUF ¶ 3, above.<br><br>McMillan Decl. ¶¶ 42, 44.<br><br>Disputed. Reference to "NorthStar" is deliberately vague and ambiguous, disputed as to Plaintiff's improper conflation of "The NorthStar Group" with "NorthStar Source Group LLC." "The NorthStar Group" is not a legal entity, but an unincorporated brand name used in connection with a group of unrelated but similarly aligned companies that include Source Digital, Inc. and NorthStar Source Group LLC. No reference to NorthStar Source Group appears in the documents cited by Plaintiff.<br><br>McMillan Decl. ¶ 40.<br><br>Disputed. Certain independent contractors within The NorthStar Group with public-facing responsibilities are required by management to use email addresses, email signature blocks and letterhead reflecting the trade name "The NorthStar Group" (e.g., |

| | |
|---|---|
| | @thenorthstargroup.biz).  Such use has no bearing on which entity has engaged a particular individual.<br><br>McMillan Decl. ¶¶ 41<br><br>Henry Sherwin, Katherine Baggett, Kamilah Mitchell, Amber McKynzie, Candice Samuel and Nicole Duncan-Smith were all independent contractors, none of whom were engaged by NSG.<br><br>McMillan Decl. ¶ 42. 43, 44. |
| 56.  Londell McMillon has maintained ownership of Source and Northstar since 2014. Londell McMillon is a licensed attorney who has previously represented Source in intellectual property matters.<br><br>Paladino Decl. ¶ 13, Exh. 9 at 9:9-10:5, 10:17-19. | <u>Disputed</u>.  Mischaracterizes the cited testimony, which states that Mr. McMillan is the publisher and owner of The Source, and has represented SDI in copyright matters. |
| 57.  Only approved independent  contractors working as content creators have the ability  to upload content on the Source<br>Instagram page.<br><br>Paladino Decl. ¶ 13, Exh. 9 at 26:8-10. | <u>Undisputed</u>. |
| 58.      All person's advising Source on copyright compliance maintain an Northstar email domain address.<br><br>Paladino Decl. ¶¶ 7, 8, 12, 15-16, 19, Exhs. 4, 5, 8, 10-11, 14. | <u>Disputed</u>.  As reflected in the cited documents, there is no "northstar" email address.  The email domain used is "@thenorthstargroup.biz.<br><br><u>Disputed</u>.  The attorneys who advise on copyright policies and other issues related to Source Digital, Inc. are not employees of or otherwise engaged by NorthStar Source Group LLC.  They provide advice and consultation to SDI's contributors in regard to issues of legal significance that arise in connection with content produced for the Source website and social media accounts.<br><br>McMillan Decl. ¶¶ 42, 44.<br><br><u>Disputed.</u> Reference to "NorthStar" is deliberately vague and ambiguous, disputed as to Plaintiff's improper conflation of "The NorthStar Group" with "NorthStar Source Group LLC."  "The NorthStar Group" is not a legal entity, but an unincorporated brand name used in connection with a group of unrelated but similarly aligned companies that include Source Digital, Inc. and NorthStar Source Group LLC. No reference to NorthStar Source appears in the documents cited by Plaintiff.<br><br>McMillan Decl. ¶ 40.<br><br><u>Disputed</u>. Certain independent contractors within The NorthStar Group with public-facing responsibilities are required by management to use email addresses, email signature blocks and letterhead reflecting the trade name "The NorthStar Group" (e.g., @thenorthstargroup.biz).  Such use has no bearing on which entity has engaged a particular individual.<br><br>McMillan Decl. ¶ 41<br><br>Henry Sherwin, Katherine Baggett, Kamilah Mitchell, Amber McKynzie, Candice Samuel and Nicole Duncan-Smith were all |

| | |
|---|---|
| | independent contractors, none of whom were engaged by NSG.<br><br>McMillan Decl. ¶¶ 42, 43 |
| 59. In 2019, Northstar revised Source copyright policy in attempt to address the continued widespread infringement at the company.<br><br>Paladino Decl. ¶ 8, Exh. 5. | <u>Disputed</u>: The cited exhibit does not reference "continued widespread infringement" and does not support the assertion that the copyright policy revisions were an attempt to address "continued widespread infringement."<br><br><u>Disputed</u>. The attorneys who advise on copyright policies and other issues related to Source Digital, Inc. are not employees of or otherwise engaged by NorthStar Source Group LLC. They provide advice and consultation to SDI's contributors in regard to issues of legal significance that arise in connection with content produced for the Source website and social media accounts.<br><br>McMillan Decl. ¶¶ 42, 44.<br><br><u>Disputed.</u> Reference to "NorthStar" is deliberately vague and ambiguous, disputed as to Plaintiff's improper conflation of "The NorthStar Group" with "NorthStar Source Group LLC." "The NorthStar Group" is not a legal entity, but an unincorporated brand name used in connection with a group of unrelated but similarly aligned companies that include Source Digital, Inc. and NorthStar Source Group LLC. No reference to NorthStar Source Group appears in the documents cited by Plaintiff.<br><br>McMillan Decl. ¶ 40.<br><br><u>Disputed</u>. Certain independent contractors within The NorthStar Group with public-facing responsibilities are required by management to use email addresses, email signature blocks and letterhead reflecting the trade name "The NorthStar Group" (e.g., @thenorthstargroup.biz). Such use has no bearing on which entity has engaged a particular individual.<br><br>McMillan Decl. ¶ 41<br><br>Henry Sherwin, Katherine Baggett, Kamilah Mitchell, Amber McKynzie, Candice Samuel and Nicole Duncan-Smith were all independent contractors, none of whom were engaged by NSG.<br><br>McMillan Decl. ¶¶ 42, 43 |
| 60. The 2019 revisions to the Source copyright policy consisted of authorizing content creators, employees, interns, and independent contractors to obtain their images from another third-party website created by Daniel Garcia containing only images licensed by Defendants for use.<br><br>Paladino Decl. ¶ 8, 13 Exhs. 5, 9 at 64:3-65:18. | <u>Disputed</u>. Misrepresents the document. The 2019 revisions to SDI's copyright policy implemented a policy that SDI contributors should use either (i) images from the licensed Daniel Garcia database; or (ii) images from the licensed Shutterstock database, or (iii) images owned or licensed by The Source, or (iv) images which have been approved for use by an authorized third party, or (v) images available for use pursuant to a Creative Commons license. The copyright policy also provides that uses may be permitted in specific circumstances under the fair use doctrine.<br><br>Paladino Decl., Exs. 4, 5, 12, 14 |

| | |
|---|---|
| 61.    The 2019 copyright policy revisions were sent to Source employees by Northstar employee, and any questions were to be directed  at  Source's  attorneys, who  were employed by Northstar.<br><br>Paladino Decl. ¶¶ 8, 13, Exhs. 5, 9 at 64:7-65:8. | **Disputed.**  The attorneys who advise on copyright policies and other issues related to Source Digital, Inc. are not employees of or otherwise engaged by NorthStar Source Group LLC.  They provide advice and consultation to SDI's contributors in regard to issues of legal significance that arise in connection with content produced for the Source website and social media accounts.<br><br>McMillan Decl. ¶¶ 42, 44.<br><br>Disputed. Reference to "NorthStar" is deliberately vague and ambiguous, disputed as to Plaintiff's improper conflation of "The NorthStar Group" with "NorthStar Source Group LLC."  "The NorthStar Group" is not a legal entity, but an unincorporated brand name used in connection with a group of unrelated but similarly aligned companies that include Source Digital, Inc. and NorthStar Source Group LLC.  No reference to NorthStar Source Group appears in the testimony cited by Plaintiff.<br><br>McMillan Decl. ¶ 40.<br><br>Disputed. Certain independent contractors within The NorthStar Group with public-facing responsibilities are required by management to use email addresses, email signature blocks and letterhead reflecting the trade name "The NorthStar Group" (e.g., @thenorthstargroup.biz).  Such use has no bearing on which entity has engaged a particular individual.<br><br>McMillan Decl. ¶ 41<br><br>Henry Sherwin, Katherine Baggett, Kamilah Mitchell, Amber McKynzie, Candice Samuel and Nicole Duncan-Smith were all independent contractors, none of whom were engaged by NSG.<br><br>McMillan Decl. ¶¶ 42, 43 |
| 62.    All content creators are required to forward any and all communications purporting to authorize the use of an image not featured on one of the authorized websites to either: henry@thenorthstargroup.biz, katharine@thenorthstar.biz, or llm@thenorthstar.biz.<br><br>Paladino Decl. ¶ 7-8, 15, Exhs. 4-5, 10. | **Disputed.**  Misrepresents the document.  The cited document states that contributors are "requested" to forward any and all communications.  The "Katherine" and "llm" email domains are "@thenorthstargroup.biz," not "@thenorthstar.biz"<br><br>Disputed.  The attorneys who advise on copyright policies and other issues related to Source Digital, Inc. are not employees of or otherwise engaged by NorthStar Source Group LLC.  They provide advice and consultation to SDI's contributors in regard to issues of legal significance that arise in connection with content produced for the Source website and social media accounts.<br><br>McMillan Decl. ¶¶ 42, 44<br><br>Henry Sherwin, Katherine Baggett, Kamilah Mitchell, Amber McKynzie, Candice Samuel and Nicole Duncan-Smith were all independent contractors, none of whom were engaged by NSG.<br><br>McMillan Decl. ¶¶ 42, 43. 44. |

| | |
|---|---|
| 63.    Defendants' attorneys do not review every post before it is published; they only review the post if an intern or content creator contacts them for review of a post before publication.<br><br>Paladino Decl. ¶ 13, Exh. 9 at 85:22-86:11. | Disputed.  Mischaracterizes the testimony, which states that attorneys review posts when a potential issue of legal significance arises in connection with a post.<br><br>Disputed.  The attorneys who advise on copyright policies and other issues related to Source Digital, Inc. are not employees of or otherwise engaged by NorthStar Source Group LLC.  They provide advice and consultation to SDI's contributors in regard to issues of legal significance that arise in connection with content produced for the Source website and social media accounts.  Defendants also incorporate by reference their response, objections and citations in SUF ¶ 3, above.<br><br>McMillan Decl. ¶¶ 42, 44. |
| 64.  Defendants did not produce any evidence showing that any content creator contacted any person responsible for reviewing unauthorized publication of images at Source or Northstar before the publishing the Infringing Uses.<br><br>Paladino Decl. ¶ 20. | Disputed as to the characterization of uses as "infringing."  Attorney argument is not evidence.<br><br>Disputed.  The attorneys who advise on copyright policies and other issues related to Source Digital, Inc. are not employees of or otherwise engaged by NorthStar Source Group LLC.  They provide advice and consultation to SDI's contributors in regard to issues of legal significance that arise in connection with content produced for the Source website and social media accounts.  Defendants also incorporate by reference their response, objections and citations in SUF ¶ 3, above.<br><br>McMillan Decl. ¶¶ 42, 44. |
| 65.    A content creator is approved to have access once they have been briefed on the policies and procedures and once they have satisfied Defendants that they exhibit sufficient knowledge of Source copyright policy and procedures.<br><br>Paladino Decl. ¶ 13, Exh. 9 at 28:7-30:7. | Disputed.  Mischaracterizes the cited testimony, which states that a contributor will be approved to receive access to the @thesource Instagram account when they have sufficiently demonstrated that (i) they understand hip hop and hip hop culture; (ii) they understand the policies and procedures of Source Digital; (iii) they understand and respect the vision and of Source Digital's management, to respect artist's and photographers work; (iv) they must review, often the policies and procedures and attend meetings to go over these conditions; and (v) they must agree not to use certain derogatory terms on the platform.<br><br>Disputed.  The attorneys who advise on copyright policies and other issues related to Source Digital, Inc. are not employees of or otherwise engaged by NorthStar Source Group LLC.  They provide advice and consultation to SDI's contributors in regard to issues of legal significance that arise in connection with content produced for the Source website and social media accounts.  Defendants also incorporate by reference their response, objections and citations in SUF ¶ 3, above.<br><br>McMillan Decl. ¶¶ 42, 44. |
| 66.    Content    creators    must    exhibit understanding of the copyright policy and procedures through  open  dialogue  with Defendants contributors and lawyers.<br><br>Paladino Decl. ¶ 13, Exh. 9 at 29:17-30:7. | The development and publication of content on the SDI website and social media is performed by contributors engaged by SDI, not NSG.<br><br>McMillan Decl. ¶¶ 6, 7, 8, 37.<br><br>Disputed.  The attorneys who advise on copyright policies and other issues related to Source Digital, Inc. are not employees of or otherwise engaged by NorthStar Source Group LLC.  They provide advice and consultation to SDI's contributors in regard to issues of legal |

| | |
|---|---|
| | significance that arise in connection with content produced for the Source website and social media accounts.  Defendants also incorporate by reference their response, objections and citations in SUF ¶ 3, above.<br><br>McMillan Decl. ¶¶ 42, 44.<br><br><u>Disputed</u>.  Mischaracterizes the cited testimony, which states that to understand Source Digital's policies and procedures, contributors must read them, agree to them, and periodically reread them.  They must also be capable of having meaningful dialogue and discussion regarding the policies and contribute as to how to effectively stay in compliance. |
| 67.  The people overseeing the content creator's compliance with the Source copyright policy have Northstar email domains and address the content creators as the "Northstar Team."<br><br>Paladino Decl. ¶¶ 7-8, 12, 15-17, 19, Exhs. 4-5, 8, 10-12, 14; Id. ¶ 13, Exh. 9 at 30:8-31:6, 50:13-51:5. | <u>Disputed</u>.  The attorneys who advise on copyright policies and other issues related to Source Digital, Inc. are not employees of or otherwise engaged by NorthStar Source Group LLC.  They provide advice and consultation to SDI's contributors in regard to issues of legal significance that arise in connection with content produced for the Source website and social media accounts.<br><br>McMillan Decl. ¶¶ 42, 44.<br><br><u>Disputed</u>.  Reference to "NorthStar" is deliberately vague and ambiguous, disputed as to Plaintiff's improper conflation of "The NorthStar Group" with "NorthStar Source Group LLC."  "The NorthStar Group" is not a legal entity, but an unincorporated brand name used in connection with a group of unrelated but similarly aligned companies that include Source Digital, Inc. and NorthStar Source Group LLC.  No reference to NorthStar Source Group appears in the document and testimony cited by Plaintiff.  Reference to "Northstar team" does not mean "NorthStar Source Group" team. McMillan Decl. ¶ 40.<br><br><u>Disputed</u>. Certain independent contractors within The NorthStar Group with public-facing responsibilities are required by management to use email addresses, email signature blocks and letterhead reflecting the trade name "The NorthStar Group" (e.g., @thenorthstargroup.biz).  Such use has no bearing on which entity has engaged a particular individual.  In fact, none of these independent contractors are engaged by NSG.<br><br>McMillan Decl. ¶ 41<br><br>Henry Sherwin, Katherine Baggett, Kamilah Mitchell, Melissa Sanchez and Matthew Abbott are all present or former attorneys and independent contractors.  None of them were ever engaged by NSG.<br><br>McMillan Decl. ¶¶ 42, 43. |
| 68. The Source copyright    policy authorizes content creators to only use images from the database created for the Source by Daniel Garcia, Shutterstock, owned or licensed by the Source, images for which they have obtained explicit approval to use, or Creative Commons.<br><br>Paladino Decl. ¶¶ 7-8, Exhs. 4-5. | <u>Disputed</u>.  Misrepresents the document.  The copyright policies provide that SDI contributors should use either (i) images from the licensed Daniel Garcia database; or (ii) images from the licensed Shutterstock database, or (iii) images owned or licensed by The Source, or (iv) images which have been approved for use by an authorized third party, or (v) images available for use pursuant to a Creative Commons license.  The copyright policy also provides that uses may be permitted in specific circumstances under the fair use doctrine. |

| | |
|---|---|
| | Paladino Decl., Exs. 4 , 5 . |
| 69.    Defendants advised content creators to comply with the copyright guidelines even when uploading content to Instagram.<br><br>Paladino Decl. ¶ 16, Exh. 11. | Disputed.  The attorneys who advise on copyright policies and other issues related to Source Digital, Inc. are not employees of or otherwise engaged by NorthStar Source Group LLC.  They provide advice and consultation to SDI's contributors in regard to issues of legal significance that arise in connection with content produced for the Source website and social media accounts. Defendants also incorporate by reference their response, objections and citations in SUF ¶ 3, above.<br><br>McMillan Decl. ¶¶ 42, 44. |
| 70.    Defendants publish photographs on its Instagram for their cinematic and artistic depiction of hip hop celebrities.<br><br>Paladino Decl. ¶ 13, Exh. 9 at 82:9-25. | Disputed.  The development and publication of content on the SDI website and social media is performed by contributors engaged by SDI, not NSG.  Defendants also incorporate by reference their response, objections and citations in SUF ¶ 3, above.<br><br>McMillan Decl. ¶¶ 6, 7, 8, 37.<br><br>Disputed.  Misrepresents the deposition testimony.  The reference to "cinematic" describes the style of the photograph at issue in this separate lawsuit (this deposition is from another case), not the reasons that SDI posted it, which are described as "for historical and cultural context." The reference to "art" in the following paragraph refers to hip hop, not to the photograph. |
| 71.    Source    pays    the    independent contractors for their work.<br><br>Paladino Decl. ¶ 13, Exh. 9 at 17:4-9. | Disputed.  Misrepresents the evidence.   The cited testimony states that Source Digital, Inc. pays the independent contractors who work for The Source. |
| 72.    Source earns revenue.<br><br>Paladino Decl. ¶ 13, Exh. 9 at 22:20-24. | Disputed.  Misrepresents the evidence.   The cited testimony states that Source Digital, Inc. earned revenue in 2022. |
| 73.  Source's independent contractors or content creators maintain Northstar email domains. Amber McKynzie, Source's "Senior Digital Editor" maintains a @northstar.biz email address and Candice Samuel, Source's "Digital Marketing and Social Media," maintains an @northstar.biz email address.<br><br>Paladino Decl. ¶¶ 16, 19, Exhs. 11, 14. | Disputed. The email domain "@northstar.biz" is not used and misrepresents the documents.<br><br>Disputed. The development and publication of content on the SDI website and social media is performed by contributors engaged by SDI, not NSG.<br><br>McMillan Decl. ¶¶ 6, 7, 8, 37.<br><br>Amber McKynzie and Candice Samuel were both independent contractors engaged by SDI.<br><br>McMillan Decl. ¶ 43.<br><br>Disputed. Reference to "NorthStar" is deliberately vague and ambiguous, disputed as to Plaintiff's improper conflation of "The NorthStar Group" with "NorthStar Source Group LLC." "The NorthStar Group" is not a legal entity, but an unincorporated brand name used in connection with a group of unrelated but similarly aligned companies that include Source Digital, Inc. and NorthStar Source Group LLC.<br><br>McMillan Decl. ¶ 40. |

| | |
|---|---|
| | <u>Disputed</u>. Certain independent contractors within The NorthStar Group with public-facing responsibilities are required by management to use email addresses, email signature blocks and letterhead reflecting the trade name "The NorthStar Group" (e.g., @thenorthstargroup.biz). Such use has no bearing on which entity has engaged a particular individual.  In fact, none of these independent contractors are engaged by NSG.<br><br>McMillan Decl. ¶¶ 41-44 |
| 74.    The unauthorized exploitation of the Subject Photographs damages Monroe's ability to market those photographs and deprived him of license fees that are typically paid for digital publication.<br><br>Monroe Decl. ¶ 16. | <u>Disputed</u>.  Plaintiff has not provided any license agreements or other evidence that he licensed 30-year old Photographs for use on websites or social media, and has failed to show any market for the photographs that would allegedly be damaged.<br><br>Abbott Decl. ¶ 6. |
| 75.    The Subject Photographs are not featured, or authorized to be featured, on Creative Commons, Daniel Garcia's website, or Shutterstock.<br><br>Monroe Decl. ¶ 18. | <u>Undisputed</u>. |
| 76.    Source claims that content creator, Terrance Hamilton, was responsible for the publication of the Infringing Uses identified in ¶¶ 9, 16 herein.<br><br>Paladino Decl. ¶ 18, Exh. 13. | <u>Disputed</u> as to the characterization of uses as "infringing."  Attorney argument is not evidence.<br><br><u>Disputed</u>.  Misrepresents the cited document. SDI did not claim that Terrance Hamilton published the photograph of Lauryn Hill and D'Angelo, as referenced in Plaintiff's SUF ¶ 9. |
| 77.    Terrance Hamilton is the content creator responsible for publishing the infringing content in <i>Shihab v. Source</i>, 2024 WL 3461351, at *5 (S.D.N.Y. July 18, 2024), and Hamilton was not disciplined for such violations.<br><br>Paladino Decl. ¶ 13, Exh. 9 at 31:8-25. | <u>Disputed</u> as to the characterization of uses as "infringing."  Attorney argument is not evidence.<br><br><u>Disputed</u>. SDI has disciplined and terminated its contributors for violating its copyright policies, and where appropriate, has taken legal action against more egregious contributors.  As each instance occurs under set of unique circumstances, SDI must take these circumstances into account when determining what action to take.   Disciplinary measures are taken on a case-by-case basis.<br><br>McMillan Decl. ¶ 27. |
| 78.    Northstar employees address Source content creators as "Dear Northstar Team:" in emails.<br><br>Paladino Decl. ¶ 19, Exh. 14. | <u>Disputed</u>.  Mischaracterizes the evidence, which consists of a single email.<br><br><u>Disputed</u>. The development and publication of content on the SDI website and social media is performed by contributors engaged by SDI, not NSG.<br><br>McMillan Decl. ¶¶  6, 7, 8, 37.<br><br>Amber McKynzie and Candice Samuel were both independent contractors engaged by SDI.<br><br>McMillan Decl. ¶ 43.<br><br><u>Disputed</u>. Certain independent contractors within The NorthStar Group with public-facing responsibilities are required by management to use email addresses, email signature blocks and letterhead reflecting the trade name "The NorthStar Group" (e.g., |

| | @thenorthstargroup.biz). Such use has no bearing on which entity has engaged a particular individual.  In fact, none of these independent contractors are engaged by NSG.<br><br>McMillan Decl. ¶¶ 41-44<br><br>Disputed. Reference to "NorthStar" is deliberately vague and ambiguous, disputed as to Plaintiff's improper conflation of "The NorthStar Group" with "NorthStar Source Group LLC."  "The NorthStar Group" is not a legal entity, but an unincorporated brand name used in connection with a group of unrelated but similarly aligned companies that include Source Digital, Inc. and NorthStar Source Group LLC.   Reference to "Northstar team" does not mean "NorthStar Source Group" team.<br><br>McMillan Decl. ¶ 40. |
|---|---|
| 79.  Monroe made numerous creative decisions regarding the lighting, subject positioning,  camera, and  angles when creating the Subject Photographs.<br><br>Monroe Decl. ¶ 19. | Disputed.  In general, the Photographs at issue do not reflect altered lighting or backgrounds, posing of subjects, or unique angles.<br><br>Monroe Decl., Ex. 2. |

## DEFENDANTS' ADDITIONAL MATERIAL FACTS

| Opposing Party's Additional Material Facts | Supporting Evidence |
|---|---|
| 80. SDI is a small privately owned New York corporation formed in 2014 that services the digital platform of The Source magazine ("The Source"), the oldest news publication focusing on hip-hop, urban culture, politics, and lifestyle since 1988. | McMillan Decl. ¶ 4 |
| 81. After emerging from bankruptcy, The Source was reorganized under new ownership, and years later SDI was formed to service and operate the website at www.thesource.com, which publishes content related to Hip Hop culture, arts, music, lifestyle, sports and community news.  SDI also services and operates an Instagram account titled "@thesource." | McMillan Decl. ¶ 5, 6 |
| 82. SDI publishes thousands of pieces of content on its website and social media accounts each year. | McMillan Decl. ¶ 30 |
| 83.  SDI engages independent contractors to create and publish content on its website and Instagram account as contributors.  They work remotely, provide their own work materials, and control the manner in which their content is created, including by choosing their own topics and sources, do no receive benefits nor have taxes withheld from their pay. | McMillan Decl. ¶ 7 |
| 84. All of SDI's contributors are independent contractors. | McMillan Decl. ¶ 8 |
| 85. It is SDI's general practice and policy to publish only material that is available for public use or covered by a valid license | McMillan Decl. ¶ 9 |
| 86. Every independent contractor engaged by SDI is advised of SDI's copyright policies and instructed to publish content accordingly.  SDI does not give posting privileges until contributors have demonstrated that they understand and can abide by these guidelines. | McMillan Decl. ¶ 10 |

| | |
|---|---|
| 87. The @thesource Instagram account curates, aggregates and provides commentary on images and other content of cultural relevance to hip hop, both in a contemporary and historical context, in order to celebrate, preserve and educate as to the cultural and historical legacy of Hip Hop and maintain its relevance. | McMillan Decl. ¶ 11 |
| 88. SDI does not generate revenue from contributor posts on its Instagram account. | McMillan Decl. ¶ 12 |
| 89. SDI did not generate revenue from the Posts containing the allegedly infringed photographs in this case. | McMillan Decl. ¶ 12 |
| 90. SDI does not run advertisements on photographic posts on the @thesource Instagram account. | McMillan Decl. ¶ 13 |
| 91. SDI could run the @thesource Instagram account for profit, but it has chosen not to.  The purpose of the @thesource Instagram account is to celebrate, educate and inform as to hip hop culture, and Black and Latino culture generally, both in a historical and a contemporary context. | McMillan Decl. ¶ 14 |
| 92. SDI publishes content on its Instagram account to inform, educate and foster public discussion and engagement on Instagram, not to drive traffic to its website. If SDI wanted to drive website traffic, it would include links on every Instagram post, which it does not do. | McMillan Decl. ¶ 15 |
| 93. Instagram posts like the ones at issue in this lawsuit rarely, if ever, impact the source.com website because there is no direct link from the pages containing the posts to the website. | McMillan Decl. ¶ 16 |
| 94. The @thesource Instagram contains a small, unobtrusive link to the source.com website on its profile page, alongside links to SDI's other social media accounts. A viewer who accessed an @thesource post in their Instagram feed would be taken directly to that Post page – not to the Profile page – and would have no access to this link.  In order to access this link, a viewer would have to affirmatively and directly access the Profile page. | McMillan Decl. ¶ 17; Paladino Decl., Ex. 2. |
| 95. SDI has, in only two instances, years ago, used the @thesource Instagram account to display promotional content originating entirely from SDI's promotional partner, for a limited advertising campaign, not from photograph posts.  These campaigns were wholly unrelated to, and operated separately from, the publication of content authored by SDI's contributors. | McMillan Decl. ¶ 18 |
| 96. SDI uses hashtags to identify and organize posts, and to illustrate the cultural and historical significance of their contents by associating them with content of similar cultural and historical significance. | McMillan Decl. ¶ 19 |
| 97. SDI requests that when the contributors post content that has historical significance, they use the hashtag #sourceclassics, or a similar hashtag. | McMillan Decl. ¶ 20 |
| 98. #sourceclassics refers to subject matter that was historically commented on or reported on by The Source magazine since its founding in the late 1980s. | McMillan Decl. ¶ 21 |
| 99. Using #sourceclassics associates a post with similar content that The Source magazine historically commented on or reported on and which would be considered to have historical significance, i.e., to be "classic." Using the hashtag allows a viewer to pull up that post together with all similar content marked with the hashtag, to experience the new meaning of the Posts in their proper context in the | McMillan Decl. ¶ 22, 23 |

| | |
|---|---|
| history of hip hop.  Contributors may use the hashtags #classics, #throwback, #throwbackthursday and #culture for the same purpose | |
| 100. Based on the origins of hip hop and The Source, going back to the 1980s, SDI seeks to engage with Hip Hop music and culture not merely to current events, but by celebrating and promoting the entire history of the culture and its connection and relevance to disadvantaged communities.  Contributors are encouraged to create posts that bring historically significant content into a new, contemporary context to inspire and inform the audience. | McMillan Decl. ¶ 24 |
| 101. "The Source" is the branded name of SDI's @thesource Instagram account, and consistent with every other Instagram account, this name appears in the header of every post on the account. | McMillan Decl. ¶ 25 |
| 102. Every @thesource post includes the header "The Source" as a fixed part of the account template.  This header is automatically added to every post published on the account by Instagram, so the viewers can identify the name of the Instagram account that they are viewing. | McMillan Decl. ¶ 26 |
| 103. SDI has disciplined and terminated its contributors for violating its copyright policies, and where appropriate, has taken legal action against more egregious contributors.  As each instance occurs under set of unique circumstances, and SDI must take these circumstances into account when determining what action to take.   Disciplinary measures are assessed on a case-by-case basis. | McMillan Decl. ¶ 27 |
| 104. Since 2019, SDI has taken numerous measures to address copyright infringement, including disciplining and terminating contributors for violation of copyright policies, as well as discussions of the policies and their implementation and enforcement, formally and informally in meetings and individual conversations. | McMillan Decl. ¶ 28 |
| 105. SDI's contributors are provided and expected to sign independent contractor agreements in which they agree, and represent and warrant, that all their work submitted for publishing, including photographs, does not violate copyright laws, and that they indemnify SDI against claims arising from publication of their work. | McMillan Decl. ¶ 29; Paladino Decl. Ex. 8. |
| 106. Several of the lawsuits filed against SDI involved allegedly infringing content that was put up on the website by The Source's prior owners, before SDI existed. | McMillan Decl. ¶ 32 |
| 107. NorthStar Source Group, LLC is Delaware Limited Liability Company that licenses certain trademarks to Source Digital, Inc. for use in connection with its media business. | McMillan Decl. ¶ 36 |
| 108. NorthStar Source Group, LLC is not a parent, subsidiary or agent of Source Digital, Inc.  The development and publication of content on the source.com website and social media is performed by contributors engaged by SDI.  None of the independent contractors who work on SDI's behalf are engaged by NSG.  NSG does not own the source.com website or @thesource Instagram account.   Neither SDI nor NSG have any ownership interest in the other, nor are they partners for performing any services. | McMillan Decl. ¶ 37 |

| 109.  NSG is not authorized to direct or control the development and publication of content on the SDI website and social media.  NSG does not direct or control SDI's independent contractors. | McMillan Decl. ¶ 38 |
|---|---|
| 110. NSG did not direct SDI to copy Plaintiff's photographs, and was not aware of the allegedly infringing activity until after it had occurred. | McMillan Decl. ¶ 39 |
| 111. The NorthStar Group is not a legal entity, but an unincorporated brand name used to refer, individually and collectively, to a group of separate companies that include Source Digital, Inc. and NorthStar Source Group, LLC. The NorthStar Group, as neither a legal or corporate entity, does not employ or engage any staff or independent contractors. | McMillan Decl. ¶ 40 |
| 112. Certain public-facing independent contractors who work with one of The NorthStar Group companies are required to use the email domain "@thenorthstargroup.biz, and to refer to "The NorthStar Group in their email signature block and on letterhead. | McMillan Decl. ¶ 41 |
| 113. Henry Sherwin, Katherine Baggett, Kamilah Mitchell, Melissa Sanchez and Matthew Abbott are all present or former attorneys engaged as independent contractors.  None of them have ever been engaged by NorthStar Source Group, LLC. | McMillan Decl. ¶ 42 |
| 114. Amber McKynzie, Candice Samuel and Nicole Duncan-Smith were non-attorney independent contractors engaged by Source Digital, Inc. | McMillan Decl. ¶ 43 |
| 115. The attorneys provide advice and counsel when issues of legal significance arise as to the creation and publication of content on Source Digital's platforms.  They do not control or direct the work of Source Digital's contributors. | McMillan Decl. ¶ 43 |
| 116. The "Subject Photographs" that are defined and identified as the "original photographs" in Plaintiff's First Amended Complaint are different versions of the photographs than the ones set forth in the Monroe Decl., Ex, 1, and do not contain Plaintiff's signature or copyright management information. | *Compare* Dkt. Entry 8 at ¶ 12, Dkt . Entry 8-1 *with* Monroe Decl., Ex. 1. |
| 117. The posts identified in Plaintiff's January 12, 2023, 2023 cease and desist letter were removed from display on the @thesource Instagram account as of January 26, 2023. | Abbott Decl. ¶ 4 |
| 118. The post identified in Plaintiff's February 8, 2023 cease and desist letter was removed from display on the @thesource Instagram account on February 9, 2023. | Abbott Decl. ¶ 5 |

Dated: August 9, 2024                          Respectfully submitted,


By: /s/ Matthew Abbott
THE MCMILLAN FIRM
240 W. 35th Street, Suite 405
New York, NY 10001
Tel: (646) 559-8314
matthew@thenorthstargroup.biz

*Attorneys for Defendants Source Digital, Inc. and NorthStar Source Group, LLC*