UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| T. ERIC MONROE p/k/a T. Eric Monroe, an individual,<br><br>Plaintiff,<br><br>v.<br><br>NORTHSTAR SOURCE GROUP, LLC, a Delaware limited liability company; SOURCE DIGITAL, INC., a New York corporation, individually and doing business as "The Source"; and DOES 1-10<br><br>Defendants. | Civil Action No. 1:23-cv-06220-DEH |

**PLAINTIFF'S OBJECTIONS IN REPLY TO DEFENDANT'S RULE 56.1 STATEMENT IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE COURT, ALL PARTIES, AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT, pursuant to Rule 56.1 of the Local Civil Rules of the Southern District of New York, Plaintiff, T. Eric Monroe ("Monroe"), respectfully submits this in response to Opposing Party's Rule 56.1 Statement of Undisputed Facts and requests that judgment be entered in his favor accordingly.

| Opposing Party's Supplemental Statement of Undisputed Facts and Supporting Evidence | Moving Party's Response and Supporting Evidence |
|---|---|
| 80. SDI is a small privately owned New York corporation formed in 2014 that services the digital platform of The Source magazine ("The Source"), the oldest news magazine focusing on Hip-Hop, urban culture, politics, and lifestyle since 1988. McMillion Decl. ¶ 4. | Undisputed as to the company being privately owned but disputed as to Source being the "oldest and most well-known news magazine" because the evidence cited does not establish this fact. |
| 81. After emerging from bankruptcy, The Source was reorganized under | Undisputed. |

| | |
|---|---|
| new ownership, and years later SDI was formed to service and operate the website at *www.thesource.com*, which publishes content related to Hip Hop culture, arts, music, lifestyle, sports and community news. SDI also services and operates an Instagram account titled "@thesource." McMillan Decl. ¶ 5, 6. | |
| 82. SDI publishes thousands of pieces of content on its website and social media accounts each year. McMillan Decl. ¶ 30. | Undisputed. |
| 83. SDI engages independent contractors to create and publish content on its website and Instagram account as contributors. They work remotely, provide their own work materials, and control the manner in which their content is created, including by choosing their own topics and sources, do not receive benefits nor have taxes withheld from their pay. McMillan Decl. ¶ 7. | Disputed. Source is the author of the Instagram posts that are the subject of this lawsuit. See Statement of Undisputed Facts in Support of Plaintiff's Motion ("SUF") ¶¶ 8-19, 41. To the extent Source team members publish the infringing materials they did so as an agent of Source. Source provides guidelines and policies to its team and only grants access to independent contractors and contributors that understand and agree to the terms of the copyright policy when uploading content to Instagram. SUF ¶¶ 65-66, 68-69. Additionally, Source pays its independent contractors in the form of monetary payment or school credit. SUF ¶ 71. |
| 84. All of SDI's staff and contributors are independent contractors. McMillan Decl. ¶ 8. | Disputed as to meaning of "independent contractors" and that "all" of the staff are "independent contractors" because, at a minimum, McMillan is an owner and Abbott appears to be a full-time employee. |
| 85. It is SDI's general practice and policy to publish only material that is available for public use or covered by a valid license. McMillan Decl. ¶ 9. | Disputed. Source has been sued 24 times for copyright infringement since 2019. SUF ¶ 34. The Subject Photographs were not for public use and were not licensed or authorized by Monroe. SUF ¶¶ 37, 52. |
| 86. Every independent contractor engaged by SDI is advised of SDI's | Disputed because the evidence cited does not establish this fact. No one |

| | |
|---|---|
| copyright policy and instructed to publish content accordingly. SDI does not give posting privileges until contributors have demonstrated that they understand and can abide by these guidelines. McMillan Decl. ¶ 10. | with sufficient knowledge of copyright laws at the Source reviewed the Post at issue in this matter before it was published. SUF ¶ 63. The contributor responsible for the Infringing Posts did not comply with the copyright guidelines because the Subject Photographs were not licensed and were not featured on any of the authorized websites identified in the copyright policy. *Id*. at ¶¶ 52. This lawsuit is also evident with which to dispute of this fact. |
| 87. The @thesource Instagram account curates, aggregates and provides commentary on images and other content of cultural relevance to Hip Hop, both in a contemporary and historical context, in order to celebrate, preserve and educate as to the cultural and historical legacy of Hip Hop and maintain its relevance. McMillan Decl. ¶ 11. | Disputed. The Infringing Posts at issue here does not provide any commentary on the Subject Photographs or the cultural and historical relevance of the Subject Photographs. SUF ¶¶ 8-19. |
| 88. SDI does not generate revenue from the posts published on its Instagram account by contributors. McMillan Decl. ¶ 12. | Disputed. Source's Instagram contains a link to its website, which generates revenue through advertisements. SUF ¶ 42. See also *JAMIL GULMANN SHIHAB, v. SOURCE DIGITAL, INC., et al*., No. 23CV7266 (DLC), 2024 WL 3461351, at *1 (S.D.N.Y. July 18, 2024). Source has also licensed photographs and employed photographers to create photographs for use on its Instagram and affiliated websites. SUF ¶ 45. |
| 89. SDI did not generate any revenue from the posts containing the allegedly infringed photographs in this case. McMillan Decl. ¶ 12. | Disputed. Source's Instagram has gained followers and notoriety since uploading the Subject Photographs to its account which increases user engagement on its revenue generating website. SUF ¶ 50. |
| 90. SDI does not run advertisements on photographic posts on the @thesource Instagram account. McMillan Decl. ¶ 13. | Disputed. Source has published photographs in connection with marketing advertisements and campaigns. SUF ¶ 43. |

| | |
|---|---|
| 91. SDI could widely run the @thesource Instagram account for profit, but it has chosen not to. The purpose of the @thesource Instagram account is to celebrate and promote Hip Hop culture, and Black and Latino culture generally, both in a historical and a contemporary context. McMillan Decl. ¶ 14. | Disputed. Source earns revenue from its Instagram, which contains links to its digital advertising website, *www.thesource.com*. SUF ¶ 42. Source also publishes advertisements on its Instagram and licenses photographs for publication on its Instagram. SUF ¶ 43. *JAMIL GULMANN SHIHAB, v. SOURCE DIGITAL, INC., et al.*, No. 23CV7266 (DLC), 2024 WL 3461351, at *5 (S.D.N.Y. July 18, 2024). |
| 92. SDI publishes content on its Instagram account to inform, educate and foster public discussion and engagement on Instagram, not to drive traffic to its website. If SDI wanted to drive website traffic, it would include links on every Instagram post, which it does not do. McMillan Decl. ¶ 15. | Disputed. Source earns revenue directly from its Instagram profile through advertising. Source also includes links to its website on its Instagram page. *JAMIL GULMANN SHIHAB, v. SOURCE DIGITAL, INC., et al.*, No. 23CV7266 (DLC), 2024 WL 3461351, at *5 (S.D.N.Y. July 18, 2024). Source also includes hashtags on each post in attempt to increase engagement via linked posts. SUF ¶ 41. Source also publishes photographs to its Instagram with captions stating "More on *thesource.com* at link in bio" directing users directly to its website via the link featured on the profile page. |
| 93. Instagram posts like the ones at issue in this lawsuit rarely, if ever, impact the *source.com* website because there is no direct link from the pages containing the posts to the website. McMillan Decl. ¶ 16. | Disputed because the evidence does not support this fact. Source published photographs on its Instagram to increase user engagement and notoriety on its website and social media platforms. |
| 94. The @thesource Instagram contains a small, unobtrusive link to the *source.com* website on its profile page, alongside links to SDI's other social media accounts. A viewer who accessed an @thesource post in their Instagram feed would be taken directly to that post page – and would have no access to this link. In order to access this link, a viewer would have to affirmatively and directly access the | Disputed. Source's Instagram profile contains one link on its profile, *www.thesource.com*, with no other links to any other profiles or websites. *JAMIL GULMANN SHIHAB, v. SOURCE DIGITAL, INC., et al.*, No. 23CV7266 (DLC), 2024 WL 3461351, at *5 (S.D.N.Y. July 18, 2024). A user viewing the images published to the Instagram page would be directed to the profile view of the @thesource Instagram profile page containing the |

| | |
|---|---|
| profile page. McMillan Decl. ¶ 17; Paladino Decl., Ex. 2. | link directly to the website if the user clicked on the @thesoruce name. Source also publishes photographs to its Instagram with captions stating "More on *thesource.com* at link in bio" directing users directly to its website via the link featured on the profile page. |
| 95. SDI has, in only two instances, used the @thesource Instagram account to display promotional content originating entirely from SDI's promotional partner, for a limited advertising campaign, not from photograph posts. These campaigns were wholly unrelated to, and operated separately from, the publication of content authored by SDI's contributors. McMillan Decl. ¶ 18. | Disputed. Source has previously obtained licenses to display images on its Instagram. SUF ¶ 68. Source also displays its Magazine covers and news articles on its Instagram with the caption to the photographs stating, "More on thesource.com at link in bio." Source's copyright policy requires contributors to obtain licenses or authorization before publishing content on the Source's Instagram. SUF ¶ 69. |
| 96. SDI uses hashtags to identify and organize posts, to be experienced in a specific cultural or historical context by associating them with similar types of content. McMillan Decl. ¶ 19. | Disputed. The hashtags used here have no relevance to cultural or historical context. The content displayed when clicking the hashtags has no commonality or theme and is simply a way to increase user engagement and draw views from users who search by hashtags. *JAMIL GULMANN SHIHAB v. SOURCE DIGITAL, INC., et al.*, No. 23CV7266 (DLC), 2024 WL 3461351, at *5 (S.D.N.Y. July 18, 2024). |
| 97. SDI requests that when the contributors post content that has historical significance, they should use the hashtag #sourceclassics, or a similar hashtag. McMillan Decl. ¶ 20. | Disputed. The evidence in support does not prove this fact. Source has provided no evidence of any such direction to contributors. |
| 98. #sourceclassics refers to subject matter that was historically commented on or reported on by The Source magazine since its founding in the late 1980s. McMillan Decl. ¶ 21. | Disputed. The Infringing Posts containing #sourceclassics did not comment or refer to the subject matter of the Subject Photographs and the Source magazine never commented on any historical or cultural aspect of the Subject Photographs. |

| | |
|---|---|
| 99. Using #sourceclassics associates a post with similar content that the Source community would consider to have historical significance, i.e., to be "classic." Using the hashtag allows a viewer to pull up that post together with all similar content marked with the hashtag, to experience the new meaning of the Posts in their proper context in the history of hip hop. Contributors may use the hashtags #classic, #throwback, #throwbackthursday and #90shiphop for the same purpose. McMillan Decl. ¶ 22, 23. | Disputed. The hashtags serve no purpose other than falsely associate Monroe's work as the Source and increase user engagement from users who may search for content via hashtags. The content featured when clicking the hashtags has no correlation or relation to the Subject Photographs featured in the Infringing Posts. *JAMIL GULMANN SHIHAB v. SOURCE DIGITAL, INC., et al.*, No. 23CV7266 (DLC), 2024 WL 3461351, at *5 (S.D.N.Y. July 18, 2024). |
| 100. Based on the origins of Hip Hop and The Source, going back to the 1980s, SDI seeks to engage with Hip Hop music and culture not merely in regard to current events, but by celebrating and promoting the entire history of the culture and its connection and relevance to disadvantaged communities. Contributors are encouraged to create posts that bring historically significant content into a new, contemporary context to inspire and inform the audience. McMillan Decl. ¶ 24. | Disputed. The evidence does not support the fact. |
| 101. "The Source" is the branded name of SDI's @thesource Instagram account, and consistent with every other Instagram account, this name appears in the header of every post on the account. McMillian Decl. ¶ 25. | Undisputed to the fact that The Source is "SDI's brand" and that "The Source" appears in the gutter of every post published on the Source Instagram account. |
| 102. Every @thesource post includes the header "The Source" as a fixed part of the account template. This header is automatically added to every post published on the account by Instagram, so the viewers can identify the name of the Instagram account that they are viewing. McMillian Decl. ¶ 26. | Undisputed as to the fact that the Source header is "added to every post published on the account." Disputed as to the fact that Instagram publishes the post to the account and that the header is included "so the viewers can identify the name of the Instagram account that they are viewing" because the evidence does not support this fact. |
| 103. SDI has disciplined and terminated its contributors for | Disputed because the evidence does not support this fact. Source has |

| | |
|---|---|
| violating its copyright policies, and where appropriate, has taken legal action against more egregious contributors. As each instance occurs under set of unique circumstances, and SDI must take these circumstances into account when determining what action to take. Disciplinary measures are assessed on a case-by-case basis. McMillan Decl. ¶ 27. | admitted to not taking any disciplinary action against the contributor responsible for Infringing Posts at the subject of prior lawsuits. SUF ¶ 54, 77. Source's copyright guidelines also contain no disciplinary procedure. Id. at ¶ 53. Source has provided no evidence supporting this fact. |
| 104. Since 2019, SDI has taken numerous measures to address copyright infringement, including disciplining and terminating contributors for violation of copyright policies, as well as discussion of the policies and their implementation and enforcement, formally and informally in meetings and individual conversations. McMillan Decl. ¶ 28. | Disputed. The evidence does not support this fact. Source has produced no evidence or assertion that Source took disciplinary action against the contributors responsible for the Infringing Posts. |
| 105. SDI's contributors are provided and expected to sign independent contractor agreements in which they agree, and represent and warrant, that all their work submitted for publishing, including photographs, does not violate copyright laws, and that they indemnify SDI against claims arising from publication of their work. McMillan Decl. ¶ 29; Paladino Decl. Ex. 8. | Undisputed as to the fact that SDI requests that contributors sign an "independent contract agreement," but disputed as to whether any independent contractor has every signed the agreement. Source has only produced unsigned versions of the agreement. SUF ¶ 65. |
| 106. Several of the lawsuits filed against SDI involved allegedly infringing content that was put up on the website by The Source's prior owners, before SDI even existed. McMillan Decl. ¶ 32. | Disputed. The lawsuits cited in Plaintiff's SUF begin in 2019 and the owner of Source has been the same since 2014. SUF ¶ 34, 56. The current owner of Source represented SDI in intellectual property cases in 2019, 2020, 2021, 2022, while also acting as owner of Source. SUF ¶ 56. |
| 107. NorthStar Source Group, LLC is Delaware Limited Liability Company that licenses certain trademarks to Source Digital, Inc. for use in connection with its media business. McMillan Decl. ¶ 36. | Undisputed. |

| | |
|---|---|
| 108. NorthStar Source Group, LLC is not a parent, subsidiary or agent of Source Digital, Inc. The development and publication of content on the source.com website and social media is performed by contributors engaged by SDI. None of the independent contractors who work on SDI's behalf are engaged by NSG. NSG does not own the source.com website or @thesource Instagram account. Neither SDI nor NSG have any ownership interest in the other, nor are they partners for performing any services. McMillan Decl. ¶ 37. | Disputed as to Northstar's involvement in the development and publications on Source's websites and social media accounts. The evidence does not support the fact. The contributors maintain Northstar email addresses, use Northstar email signatures, and Source's copyright policy is executed on Northstar letterhead. SUF ¶ 58, 73. |
| 109. NSG is not authorized to direct or control the development and publication of content on the SDI website and social media. NSG does not direct or control SDI's independent contractors. McMillian Decl. ¶ 38. | Disputed. SDI independent contractors are expressly directed to contact NSG employees for questions regarding the copyright policy and authorized publications. NSG employees provide guidance on the SDI copyright policy and procedures. NSG employees revise and distribute updated and revised SDI copyright policies. |
| 110. NSG did not direct SDI to copy plaintiff's photographs and was not aware of the allegedly infringing activity until after it had occurred. McMillian Decl. ¶ 39. | Disputed. The evidence does not support this fact. Content creators are directed to contact NSG employees for review of any content featuring photographs not licensed or featured on the authorized websites. The Subject Photographs were not licensed or featured on the authorized websites, so content creators were required to notify NSG employees for review of the Infringing Posts before publication. |
| 111. The NorthStar Group is not a legal entity, but an unincorporated brand name used to refer, individually and collectively, to a group of separate companies that include Source Digital, Inc. and NorthStar Source Group, LLC. The Northstar Group, as neither a legal or corporate entity, does not employ or engage any staff or independent contractors. McMillan Decl. ¶ 40. | Disputed as to the Northstar Group encompassing both SDI and Northstar Source Group, and therefore employing persons. |

| | |
|---|---|
| 112. Certain public-facing independent contractors who work with one of The NorthStar Group companies are required to use the email domain "@thenorthstargroup.biz, and to refer to "The NorthStar Group in their email signature block and on letterhead. McMillan Decl. ¶ 41. | Disputed. The evidence does not support this fact. |
| 113. Henry Sherwin, Katherine Baggett and Kamilah Mitchell were all attorneys engaged as independent contractors by NorthStar Business Enterprises, LLC, a New York limited liability company separate from and unrelate to NorthStar Source Group, LLC. McMillan Decl. ¶ 42. | Disputed. The attorneys have Northstar email addresses and sign off with Northstar Group signature blocks. The Northstar Group refers to both SDI and the Northstar Source Group, per Defendants own admission. The attorneys also distributed Source's copyright policy on Northstar Group letterhead. |
| 114. Amber McKynzie, Candice Samuel and Nicole Duncan-Smith were non-attorney independent contractors engaged by Source Digital, Inc. McMillan Decl. ¶ 43. | Undisputed as to their role as a non-attorney independent contractor engagement. Disputed as to their engagement based on the fact both have Northstar email addresses and Northstar signature blocks. SUF ¶ 74. |
| 115. These attorneys provide advice and counsel when issues of legal significance arise as to the creation and publication of content on Source Digital's platforms. They do not control or direct the work of Source Digital's contributors. McMillan Decl. ¶ 43. | Disputed. The evidence does not support this fact. The attorneys are responsible for directing and monitoring Source contributors' publications on the websites and social media accounts, as stated in SDI policies and in email communications. SUF ¶¶ 62, 67. |
| 116. The "Subject Photographs" that are defined and identified as the "original photographs" in Plaintiff's First Amended Complaint are different versions of the photographs than the ones set forth in the Monroe Decl., Ex. 1, and do not contain Plaintiff's signature or CMI. Compare Dkt. Entry 8 at ¶ 12, Dkt. Entry 8-1 with Monroe Decl. Exh 1. | Undisputed that the Subject Photographs contained in the FAC do not contain Monroe's CMI. Disputed that Monroe has distributed the Subject Photographs online with his authorship associated with the Subject Photographs. Disputed that the photographs are "different" in any way other than the inclusion of Monroe's CMI. |
| 117. The post identified in Plaintiff's January 12, 2023 cease and desist letter was removed from display on the @thesource Instagram account as of January 26, 2023. Abbott Decl. ¶ 4. | Undisputed that it was eventually removed. |

| | |
|---|---|
| 118. The posts identified in Plaintiff's February 8, 2023 cease and desist letter was removed from display on the @thesource Instagram account on February 9, 2023. Abbott Decl. ¶ 5. | Undisputed that it was eventually removed. |

 

Respectfully submitted,

Date: August 16, 2024   By:   */s/ Scott Alan Burroughs*
Scott Alan Burroughs, Esq.
Mackenzie Paladino, Esq.
DONIGER / BURROUGHS
247 Water Street, First Floor
New York, New York 10047
(310) 590-1820
mpaladino@donigerlawfirm.com
scott@donigerlawfirm.com
*Attorneys for Plaintiff*