UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| T. ERIC MONROE, an individual, <br><br>      Plaintiff, <br><br>    v. <br><br> NORTHSTAR SOURCE GROUP, LLC, a Delaware limited liability company; SOURCE DIGITAL, INC., a New York corporation, individually and doing business as "The Source", and DOES 1-10, <br><br>      Defendants. | 1:23-cv-06220 <br><br> **OPINION AND ORDER** |

DALE E. HO, United States District Judge:

  Plaintiff T. Eric Monroe ("Monroe") is a professional photographer known for his portraits of hip-hop artists from the 1990s. Pl.'s Rule 56.1 Statement ("Pl.'s SOF") ¶¶ 4-5, ECF No. 31. This matter arises from a series of Instagram posts published by Defendant Source Digital, Inc. ("SDI" or "Source"), which operates the digital platform for *The Source* magazine, and its affiliated intellectual property holding company, NorthStar Source Group, LLC ("NorthStar"). *See* Pl.'s SOF ¶¶ 1-2, 8-22. Monroe alleges that Defendants directly, vicariously, and/or contributorily infringed his copyrights by copying and publicly displaying eleven of his photographs without authorization and by removing his copyright management information in violation of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1202. *See* First Am. Compl. ("FAC") ¶¶ 20-38, ECF No. 8.

  Before the Court is Monroe's motion for summary judgment on all claims. *See* Pl.'s Mem. Supp. Mot. for Summ. J. ("Pl.'s Br.") at 2, ECF No. 30. Defendants oppose the motion and assert the affirmative defense of fair use based on SDI's use of Monroe's photographs. Defs.' Mem.

1

Opp'n Mot. S.J. ("Defs' Br.") at 1, ECF No. 38.  Also before the Court is Monroe's motion to seal certain exhibits submitted in connection with his motion for summary judgment, ECF No. 34.

For the reasons set forth below, Monroe's motion for summary judgment is **GRANTED in part and DENIED in part**.  Specifically, Monroe's motion for summary judgment is **GRANTED** as to Source Digital, Inc.'s liability for direct copyright infringement (except as to two images, discussed below) and **DENIED** as to the willfulness of that infringement, NorthStar's vicarious and contributory liability, and Defendants' alleged violations of the Digital Millennium Copyright Act under 17 U.S.C. § 1202(a) and (b).  Monroe's motion to seal is **DENIED** without prejudice to renewal within two weeks of the date of this Order.

### BACKGROUND[1]

T. Eric Monroe is a photographer known for capturing images of hip-hop and R&B artists during the 1990s.  Pl.'s SOF ¶¶ 4-5.  Monroe's portfolio includes photographs of artists such as Lauryn Hill, Beyoncé, and D'Angelo.  *See* Pl.'s SOF ¶¶ 9-19.  The eleven photographs at issue in this case (the "Subject Photographs") were publicly displayed on Monroe's website.  *Id.* ¶ 24.  Monroe asserts that the images included his signature mark (@tdoteric) inside a red box, though Defendants dispute whether the cited exhibits establish when or how the photographs were publicly displayed, including whether the mark was consistently included.  *Id.* ¶¶ 24, 32; Defs.' Rule 56.1 Statement ("Defs.' SOF") ¶ 32, ECF No. 39.

---

[1] The facts recited herein are viewed in the light most favorable to Defendants and are taken from the parties' Rule 56.1 statements of undisputed material fact, the declarations filed in support of and in opposition to the motion for summary judgment, and the exhibits attached to those declarations.  "Unless otherwise noted, the Court cites only to a party's Rule 56.1 Statement where the adverse party does not dispute the fact, has offered no admissible evidence to refute that fact, simply seeks to add its own 'spin' on the fact, or otherwise disputes only the inferences that can be drawn from the stated fact."  *Nixon v. Source Digital, Inc.*, No. 23 Civ. 5218, 2024 WL 5202514, at *1 (S.D.N.Y. Dec. 23, 2024).

Monroe registered various photographs with the United States Copyright Office on four occasions: April 13, 2023, November 28, 2017, March 28, 2017, and March 20, 2017.  Pl.'s SOF ¶ 6; Defs.' SOF ¶ 6.[2]  While Defendants assert that "a number of the photographs [at issue] do not appear to be covered in [these] registrations," this assertion is overstated, as the majority of the Subject Photographs can be matched to descriptions in the registration records.  Defs.' SOF ¶ 6; Monroe Decl. Exs. 1, 2, & 3, ECF No. 32.  Based on the exhibits in Monroe's declaration, the first two images in Exhibit 2 appear to correspond to the November 28, 2017 registration; Images 5, 7, and 8 to the March 20, 2017 registration; and Images 3, 6, 9, and 10 to the March 28, 2017 registration.  *See id.*  Images 4 (depicting Dr. Dre and Ed Lover) and 11 (depicting Beyoncé), however, lack corresponding descriptions in the registration records provided by Monroe.  *See id.*  The parties do not dispute that Monroe is "the sole owner of all rights, title, and interest in the Subject Photographs," and that he has "never authorized or licensed Defendants to use the Subject Photographs in any way."  Defs.' SOF ¶¶ 7, 37.

Source Digital, Inc. is a New York corporation that operates the digital platform for *The Source* magazine ("The Source"), which covers news, commentary, and criticism on hip-hop music, culture, politics, and lifestyle.  Defs.' SOF ¶ 80.  It publishes thousands of pieces of content on both its website, www.thesource.com, and its official Instagram account, *@thesource*, each year.  *Id.* ¶ 81-82.  SDI asserts that the account's purpose is to celebrate and preserve hip-hop and broader Black and Latino culture in both historical and contemporary contexts.  Defs.' SOF ¶ 91.  According to SDI, the account is not operated for profit, does not contain advertisements on

---

[2] Defendants note that Monroe produced the formal Certificate of Registration for only one of these registration dates, and for the three others provided only printouts from the Copyright Office website.  Defs.' SOF ¶ 6.  Defendants do not appear to dispute the legal validity of the registrations, only whether they in fact cover each of the Subject Photographs.  *Id.*

photographic posts, and did not generate any revenue for SDI from the specific posts at issue in this case. *Id.* ¶¶ 88-92.  But Monroe asserts that SDI does in fact derive revenue from its Instagram profile and its Instagram activity, by linking to its advertising-supported website, www.thesource.com, and through captions that direct users to "More on *thesource.com* at link in bio."  Pl.'s Rule 56.1 Objections ("Pl.'s Obj.") ¶ 89-92, ECF No. 43.

NorthStar Source Group, LLC is a Delaware Limited Liability Company that licenses certain trademarks to SDI "for use in connection with its media business."  Defs.' SOF ¶ 107. Defendants maintain that NorthStar neither directs nor controls the creation or publication of content on SDI's platforms, asserting that all contributors are independent contractors retained exclusively by SDI, and further contend that no ownership relationship exists between SDI and NorthStar.  *Id.* ¶¶ 108-111; Defs.' Br. at 2.  Contributors to SDI frequently use "@thenorthstargroup.biz" email addresses and reference "The NorthStar Group" in their signatures and letterhead, which Monroe contends reflects a more integrated operational relationship between SDI and NorthStar.  Pl.'s Obj. ¶¶ 108-111.  Monroe further asserts that attorneys affiliated with NorthStar revised and distributed SDI's copyright policies on NorthStar letterhead and provided guidance on publication practices, including advising SDI contributors on the use of third-party images. *Id.* ¶¶ 113-15.  Defendants dispute these claims, arguing that the attorneys served solely in an advisory capacity without editorial control.  Defs.' SOF ¶¶ 73, 113-15.

Between April 2020 and February 2023, SDI published eleven posts on its Instagram account featuring the Subject Photographs.  Pl.'s SOF ¶¶ 8-19.  Monroe alleges that these photographs were copied, reproduced, and publicly displayed without his authorization, and that SDI cropped the images to remove his copyright management information ("CMI") before

reposting them under *The Source*'s branding.  *Id.*  Upon discovering the posts, Monroe issued a

cease-and-desist letter on January 12, 2023, demanding the removal of ten infringing images.  *Id.*

¶ 21.  SDI subsequently published an additional photograph of Beyoncé on February 6, 2023,

prompting a second cease-and-desist letter two days later.  *Id.* ¶ 22.  Defendants contend that the

photographs were obtained from third-party sources and deny intentionally removing Monroe's

CMI.  Defs.' SOF ¶¶ 8-19, 24.  They assert that the posts served a non-commercial, cultural

purpose—namely, the celebration and documentation of hip-hop's legacy.  *Id.* ¶¶ 91, 100.

Monroe initiated this action on July 18, 2023, and filed the operative First Amended

Complaint on September 6, 2023, asserting claims for direct copyright infringement, vicarious and

contributory infringement, and violations of the Digital Millennium Copyright Act.  *See* FAC.  On

July 26, 2024, Monroe moved for summary judgment on all claims.  *See* ECF No. 29.  Defendants

filed their opposition on August 9, 2024.  *See* ECF No. 38.

## LEGAL STANDARD

Summary judgment is appropriate where there is "no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also*

*Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012).  A dispute is genuine "if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986).[3]  The moving party bears the initial burden of demonstrating the

absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"In moving for summary judgment against a party who will bear the ultimate burden of proof at

trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an

---

[3] In all quotations from cases, the Court omits citations, footnotes, emphases, internal
quotation marks, brackets, and ellipses, unless otherwise indicated.

essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23).

In ruling on a motion for summary judgment, the court must view all evidence "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Military & Naval Affs*, 373 F.3d 83, 89 (2d Cir. 2004), and must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson*, 680 F.3d at 236. But the non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading or on conclusory statements." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996). "Affidavits submitted in support of or in opposition to the summary judgment motion must 'be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.'" *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) (quoting Fed. R. Civ. P. 56(e)).

## DISCUSSION

In his motion for summary judgment, Monroe seeks a judgment that SDI is liable for direct infringement of his copyrights in the Subject Photographs and that its infringement was willful; that NorthStar is liable for vicarious and contributory infringement; and that both Defendants violated §1202(a) and (b) of the Digital Millennium Copyright Act. Pl.'s Br. at 1-2. Defendants oppose the motion in full, contending that their use of the photographs constitutes fair use and that there are questions of fact as to willfulness, secondary liability, and the DMCA claims. Defs.' Br. at 1. Monroe argues that Defendants' opposition "fails to establish beyond a triable issue that their

exploitation of eleven of Monroe's photographs was anything other than blatant copyright infringement." Pl.'s Reply Supp. Mot. for Summ. J. ("Pl.'s Reply") at 2, ECF No. 42. For the reasons set forth below, Monroe's motion is granted on his direct infringement claim as to all but two images, and is denied with respect to all other claims.

## I.    Copyright Infringement

The Copyright Act provides the owner of a valid copyright the exclusive rights to reproduce, distribute, publicly display, and prepare derivative works based on the copyrighted material. 17 U.S.C. § 106. To establish a claim for copyright infringement, a plaintiff must demonstrate: (1) ownership of a valid copyright; (2) that the defendant actually copied the copyrighted work; and (3) that the copying amounted to an unlawful appropriation due to substantial similarity between the works. *Michael Grecco Productions, Inc. v. Valuewalk, LLC*, 345 F. Supp. 3d 482, 500 (S.D.N.Y. 2018).

### A.    Ownership of a Valid Copyright

To prevail on a copyright infringement claim, the plaintiff must first establish ownership of a valid copyright. *Id.* "A certificate of registration from the United States Register of Copyrights constitutes *prima facie* evidence of the valid ownership of a copyright." *Jorgensen v. Epic/Sony Recs.*, 351 F.3d 46, 51 (2d Cir. 2003) (citing 17 U.S.C. § 410(c)). Monroe has submitted copyright registration records for most of the Subject Photographs. *See* Pl.'s SOF ¶ 6. Defendants do not contest that Monroe is "the sole owner of all rights, title, and interest in the Subject Photographs." Defs.' SOF ¶ 7. While there is some dispute as to whether all of the Subject Photographs are covered by the identified registrations, the Court finds that registration is not meaningfully contested for the majority of the works. Accordingly, the first element is satisfied except as to the two photographs for which registration coverage remains uncertain. Summary

judgment is denied as to Images 4 and 11, which, as explained above, lack corresponding descriptions in the registration records provided by Monroe.

### B.    Actual Copying

To establish the second element of actual copying, a plaintiff may rely on either direct evidence of copying or, more commonly, circumstantial evidence demonstrating "that the person who composed the defendant's work had access to the copyrighted material" and "that there are similarities between the two works that are probative of copying." *Piuggi v. Good for You Productions LLC*, 739 F. Supp. 3d 143, 158 (S.D.N.Y. 2024) (quoting *Lewinson v. Henry Holt & Co., LLC*, 659 F. Supp. 2d 547, 562 (S.D.N.Y. 2009)).

Here, it is undisputed that Monroe never licensed or authorized Defendants to use the Subject Photographs. *See* Defs.' SOF ¶ 37. The record reflects that the photographs were available on Monroe's website and social media. Pl.'s SOF ¶ 31. The public accessibility of these images, coupled with their cultural relevance to the content typically posted by Source, supports a reasonable inference that Defendants had access to the original works. Moreover, the images published on Defendants' Instagram account closely replicate the Subject Photographs, with no material alterations apart from the absence of Monroe's CMI. *Compare* Monroe Decl. Ex. 1, *with* Monroe Decl. Ex. 2.

The plaintiff must also demonstrate that the allegedly infringing work bears substantial similarity to the protectable elements of the original creation. This inquiry is assessed from the perspective of the ordinary observer, asking "whether an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Klauber Brothers, Inc. v. M.J.C.L.K., LLC*, 2024 WL 4467618, at *6 (S.D.N.Y. Oct. 10, 2024) (quoting *Peter F. Gaito Architecture, LLC v. Simone Development Corp.*, 602 F.3d 57, 66 (2d Cir. 2010)).

Here, a side-by-side comparison of the Subject Photographs and the Instagram posts confirms that the images used by Defendants are virtually indistinguishable from Monroe's original works.  For example, this image is one of the Subject Photographs:



And this is the corresponding allegedly infringing Instagram post:



_____

[4] Monroe Decl. Ex. 1 at 1.

[5] Monroe Decl. Ex. 2 at 2.

For all of the Subject Photographs and the corresponding Instagram posts, the composition, subjects, lighting, and overall presentation are similarly replicated without transformation. *Compare* Monroe Decl. Ex. 1, *with* Monroe Decl. Ex. 2.  No reasonable juror could view the images and fail to conclude that the two sets of works are substantially similar.  Accordingly, Monroe has satisfied his burden as to actual copying.

For the reasons discussed above, Monroe has established the elements of direct copyright infringement as a matter of law, subject to any remaining defenses.

### C.    Fair Use Defense

The fair use doctrine, codified at 17 U.S.C. § 107, serves as a statutory limitation on the exclusive rights granted to copyright holders.  It permits certain uses of copyrighted material without authorization, where such use advances the interests of criticism, commentary, news reporting, education, scholarship, or research.  17 U.S.C. § 107.  The doctrine reflects the constitutional balance between protecting the incentives of authors to create and promoting the public benefit that results from broader access to creative works.  *See Authors Guild v. Google, Inc.*, 804 F.3d 202, 213 (2d Cir. 2015).  To assess whether a use is fair, courts consider four non-exclusive factors: (1) the purpose and character of the use, including whether it is transformative and whether it is commercial; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used; and (4) the effect of the use on the market for the original work. *See* 17 U.S.C. § 107; *Valuewalk*, 345 F. Supp. 3d at 504-505; *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994).  These factors are to be weighed together, with no single factor being dispositive, and "call[] for case-by-case analysis."  *Campbell*, 510 U.S. at 577 (quoting *Harper & Row, Publrs., Inc. v. Nation Enters.*, 471 U.S. 539, 560 (1985)).

10

While fair use is inherently a mixed question of law and fact, courts may resolve the issue on summary judgment where there are no genuine disputes as to material fact. *Wright v. Warner Books, Inc.*, 953 F.2d 731, 735 (2d Cir. 1991). "Because fair use is an affirmative defense, on which the defendant bears the burden at trial, when a plaintiff challenges it on summary judgment he 'may satisfy his Rule 56 burden by showing that there is an absence of evidence to support an essential element of the non-moving party's case.'" *O'Neil v. Ratajkowski*, 563 F. Supp. 3d 112, 128 (S.D.N.Y. 2021) (quoting *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994)). Here, Defendants invoke the fair use defense to justify their publication of Monroe's copyrighted photographs on social media. Whether that defense applies depends on the outcome of the four-factor analysis set forth below.

### 1.  Purpose and Character of the Use

The first statutory factor examines "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107(1). The key question is "whether and to what extent the use at issue has a purpose or character different from the original." *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 512 (2023) (emphasis omitted). In assessing the first factor, courts consider whether the use is transformative and whether it is commercial. *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 32 (2021). Courts have also considered the defendant's good faith, though the Supreme Court has expressed skepticism that good faith should inform the analysis. *Id.*

The core inquiry under the first factor is whether the alleged infringing use is transformative; that is, whether it adds something new, with a further purpose or different character, altering the original with new expression, meaning, or message. *See Campbell*, 510 U.S. 569, 579 (1994); *Authors Guild*, 804 F.3d at 214.

Defendants contend that their use of Monroe's photographs was transformative because it recontextualized the images to highlight their historical and cultural significance through hashtags such as #sourceclassics and #throwback.  Defs.' Br. at 8.  But Defendants' posts did not critique, comment on, or otherwise transform the photographs; they simply reposted them with hashtags. That does not meaningfully alter their original purpose or add new expression, meaning, or message.  *See Shihab v. Source Digital, Inc.*, 2024 WL 3461351, at *4 (S.D.N.Y. July 18, 2024) (holding that reposting copyrighted images without material alteration or new purpose was not transformative).  Such use falls short of the transformative threshold; rather, it amounts to exploitation of Monroe's original creative work for the same purpose, which is to display images of iconic hip-hop artists.  *See Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 512 (2023) ("The meaning of a secondary work, as reasonably can be perceived, should be considered to the extent necessary to determine whether the purpose of the use is distinct from the original.").  Because Defendants' use merely repackaged Monroe's creative works for the same illustrative purpose, and did not materially alter their character, no reasonable juror could find the use transformative.  This factor weights against a finding of fair use.

While not dispositive, when the purpose of the defendant's use is commercial, it generally weighs against a finding of fair use.  *See Harper & Row*, 471 U.S. at 562 (1985) ("Every commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright." (quoting S*ony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417 (1984)).  The parties dispute whether the Instagram posts financially benefited Defendants, [6] but the Court concludes that this dispute is ultimately

---

[6] Monroe presents evidence that SDI's Instagram serves a commercial function.  For example, the Instagram profile links directly to www.thesource.com, which generates advertising revenue.  Pl.'s SOF ¶¶ 41-44.  Defendants also include calls to action in the caption of the photographs such as

immaterial.  The Supreme Court has clarified that the commercial nature of a use does not automatically preclude a finding of fair use, nor does non-commercial use guarantee it.  *See Campbell*, 510 U.S. at 584.  Commerciality is merely one consideration in analyzing the first fair use factor, which the Court must consider alongside the other fair use factors to determine whether the use qualifies as fair.  Here, assuming without deciding that the parties' dispute as to commerciality is genuine, the Court concludes that it is not material.  Even absent commerciality, the clearly non-transformative nature of the use is sufficient to tip the first factor against a finding of fair use.

Finally, courts evaluating the first fair use factor sometimes consider whether the defendant acted in good faith.  *See Google*, 595 U.S. at 32.  While the parties raise competing arguments as to Defendants' good faith,[7] the Court need not decide whether Defendants have raised a genuine dispute as to this question, because even if they had, it would not be determinative of the first fair use factor.  *See Google*, 595 U.S. at 32-33.

---

"more on thesource.com at link in bio" and use engagement-boosting hashtags.  Pl.'s Obj. ¶ 92.  Moreover, the Subject Photographs were used to attract user attention and promote SDI's brand identity, which Monroe argues has a direct impact on SDI's advertising value.  *Id.* ¶¶ 92-94.  Defendants argue that their Instagram account functions to celebrate and educate the public about hip-hop culture, and that they do not directly profit from the individual posts.  Defs.' Br. at 6.  They argue that a viewer who accessed a post through the Instagram app would be taken directly to the post page, not the profile page containing the link to The Source's revenue-generating website, and that accessing the website link would require affirmative navigation to the profile page.  Defs.' Br. at 6.  Defendants further contend that if SDI intended to drive Instagram traffic to its website, it would have included direct links in each post, which it did not do.  *Id.* at 7.

[7] Defendants argue that they acted in good faith by removing the posts after Monroe's notice.  Defs.' Br. at 9.  But as Monroe notes, after receiving a cease-and-desist letter in January 2023 identifying ten infringing uses, Defendants proceeded to publish yet another of Monroe's photographs in February 2023.  Pl.'s SOF ¶¶ 21-22.

In sum, there is no genuine dispute that Defendants' use of the Subject Photographs was non-transformative. Accordingly, even assuming that the use was not commercial and that Defendants acted in good faith, the first factor weighs against a finding of fair use.

### 2. Nature of the Copyrighted Work

The second factor considers whether the copyrighted work is more factual or creative in nature, with greater protection afforded to works that are highly creative. *See Campbell*, 510 U.S. at 586; *Valuewalk, LLC*, 345 F. Supp. 3d at 506. Courts also evaluate whether the work has been previously published, as published works generally receive somewhat less protection in the fair use context. *See Harper & Row*, 471 U.S. at 564.

There is no genuine dispute that Monroe's Subject Photographs are creative works. According to the record, Monroe exercised discretion in selecting the composition, lighting, subject matter, and camera angles when creating the photographs. Monroe Decl. ¶19. Although Defendants attempt to dispute the creative decision-making behind the photos, Defs.' SOF ¶ 79, they offer no evidence in support of that dispute, and they effectively concede the "artistic expression" of the Subject Photographs in their brief. Defs.' Br. at 8. The creative nature and expressive composition of the Subject Photographs weigh in favor of Monroe and against a determination of fair use. *See Baraban v. Time Warner, Inc.*, 2000 WL 358375, at *4 (S.D.N.Y. Apr. 6, 2000) (noting that "the art of photography has generally been deemed sufficiently creative to make the second fair use factor weigh in favor of photographer-plaintiffs").

### 3. Amount and Substantiality of the Portion Used

The third factor evaluates both the quantitative and qualitative extent of the copying—specifically, whether the defendant used more of the copyrighted work than necessary to serve a

valid purpose. *Campbell*, 510 U.S. at 586-87. "The more of a copyrighted work that is taken, the less likely the use is to be fair." *Valuewalk*, 345 F. Supp. 3d at 507.

Monroe argues that Defendants essentially copied each Subject Photograph in its entirety, including all protectable elements, and further altered the images by removing the copyright management information embedded in the originals. Pl.'s Reply at 6. Exhibit comparisons show that the images posted to Source's Instagram account are near-exact duplicates of Monroe's original photographs, aside from the removed watermark. Monroe Decl. Ex. 1-2. Defendants do not dispute that the entirety of each image was reproduced but contend that the use was incidental, claiming that the images were used to support commentary and historical celebration. Defs.' Br. at 10. However, courts have rejected the notion that full-scale reproduction of a creative work is fair use where the use merely replicates the original purpose. *See BWP Media USA, Inc. v. Gossip Cop Media, Inc.*, 196 F. Supp. 3d 395, 409 (S.D.N.Y. 2016). Because the images were copied in their entirety, without significant alteration, and used for the same illustrative purpose as the original, this factor favors Monroe and weighs against a fair use finding.

### 4. Effect of the Use on the Potential Market

The fourth fair use factor assesses whether the challenged use affects the actual or potential market for the original work or its derivatives. 17 U.S.C. § 107(4). In evaluating this factor, courts consider not only the extent of market harm caused by the particular use but also "whether the use would deprive the rights holder of significant revenues because of the likelihood that potential purchasers may opt to acquire the copy in preference to the original." *Valuewalk*, 345 F. Supp. 3d at 508. Because fair use is an affirmative defense, Monroe can meet his burden on summary judgment by showing an absence of evidence that the market for his works will be unharmed. *O'Neil*, 563 F. Supp. 3d at 128.

Here, Defendants fail to submit evidence demonstrating the absence of market harm. Monroe's uncontroverted evidence shows that he routinely licenses his photographs for commercial use, including to media companies comparable to SDI.  Monroe Decl. ¶16. Defendants did not obtain a license for their use of the Subject Photographs but publicly displayed the complete images.  Defs.' SOF ¶ 37.  As noted by the court in *Shihab*, "widespread copying of the works of professional photographers without licensing their works would damage an entire profession."  2024 WL 3461351 at *7.  The Copyright Act guarantees Monroe the exclusive right to enter or refrain from entering a licensing market, regardless of whether he is actively exploiting it.  *Castle Rock Entm't, Inc. v. Carol Publ'g Grp.*, 150 F.3d 132, 145-46 (2d Cir. 1998).  The existence of unlicensed uses like Defendants' threatens Monroe's ability to command licensing fees, dilutes the value of his portfolio, and risks setting a precedent of uncompensated use.  *See Hachette Book Grp. v. Internet Archive*, 664 F. Supp. 3d 370, 388 (S.D.N.Y. 2023).

In sum, Defendants have not introduced any evidence to show that their unlicensed use does not cause, or is unlikely to cause, market harm.  This factor weighs against a finding of fair use.

*    *    *

In light of the undisputed material facts, none of the statutory factors support Defendants' invocation of the fair use defense.  Accordingly, Defendants' fair use defense to Monroe's claim of direct copyright infringement fails as a matter of law.

### D.    Willfulness and Statutory Damages

Monroe also moves for summary judgment on the question whether Defendants acted willfully in infringing his copyrights.  Pl.'s Br. at 8.  Under the Copyright Act, a finding of willfulness may entitle a prevailing plaintiff to enhanced statutory damages of up to $150,000 per

work.  *See* 17 U.S.C. § 504(c)(2).  A defendant's conduct is deemed willful if there is evidence

that they knew their actions infringed copyright or engaged in the infringing conduct with "reckless

disregard for, or willful blindness to, the [plaintiff]'s rights."  *See Stokes v. MilkChocolateNYC*

*LLC*, 681 F. Supp. 3d 226, 238 (S.D.N.Y. 2023).  Courts may consider a range of circumstantial

evidence in assessing willfulness, and summary judgment is appropriate only where the record

admits of no reasonable dispute.  *See Fendi Adele, S.R.L. v. Ashley Reed Trading, Inc.*, 507 F.

App'x 26, 31 (2d Cir. 2013).

Monroe argues that Defendants' infringement was willful based on several categories of

evidence.  First, he notes that the Subject Photographs routinely appeared with CMI identifying

him as the author and owner, yet Defendants published cropped versions with the CMI removed.

Pl.'s Br. at 9.  Second, Monroe asserts that the Subject Photographs were not available on any of

the websites authorized under Defendants' internal copyright policies.  *Id.* at 10.  Third, Monroe

points to the publication of a twelfth infringing post after a cease-and-desist letter had been sent

regarding the first eleven photographs.  *Id.*  Finally, Monroe cites Defendants' experience as a

commercial media entity with a history of copyright litigation, including multiple infringement

actions against them in the past few years for similar conduct, as grounds to infer that Defendants

either knew or should have known their conduct was infringing.  *Id.* at 10-11.  Pl.'s SOF ¶ 34.

Defendants contest this framing of the evidence and argue that genuine issues of material

fact remain regarding willfulness, precluding resolution at the summary judgment stage.  Defs.'

Br. at 17.  They point out that the content creators who posted the images did not have actual

knowledge of Monroe's rights and that many of the images at issue were available online without

CMI.  *Id.* at 18.  They further claim that their copyright policies include training, authorization

guidelines, and enforcement procedures; and that contributors are subject to discipline for

violations. *Id.* at 19-20. Defendants also emphasize that they removed the Subject Photographs from their social media account after receiving notice, which they argue is inconsistent with a willful state of mind. *Id.* at 18.

Given the conflicting evidence in the record, including questions about Defendants' knowledge of Monroe's rights, the availability and visibility of the CMI, and the adequacy and enforcement of Defendants' internal copyright compliance practices, there remain genuine disputes of material fact on this issue. The Court therefore concludes that the question of willfulness must be left to the factfinder at trial. *See Shihab*, 2024 WL 3461351, at *8 (declining to resolve willfulness on summary judgment under similar facts). Summary judgment on this issue is therefore denied.

## II.    Vicarious and/or Contributory Copyright Infringement

In addition to his claim for direct infringement against SDI, Monroe seeks to hold NorthStar liable under theories of vicarious and contributory infringement. FAC ¶¶ 20-38. Both theories are forms of secondary liability that may attach where a defendant did not directly infringe a copyrighted work but nonetheless bears legal responsibility due to their relationship with the direct infringer or their role in facilitating the infringing activity.

### A.    Vicarious Liability

To hold a party vicariously liable for copyright infringement, a plaintiff must establish two elements: (1) the defendant had the right and ability to supervise the infringing activity, and (2) the defendant had a direct financial interest in the exploitation of the copyrighted material. *Valuewalk*, 345 F. Supp. 3d at 503.

### 1. Right and Ability to Supervise

Monroe contends that NorthStar had the right and ability to supervise SDI's content creation and publication.  Pl.'s Br. at 13.  In support, he cites evidence that SDI contributors used "@thenorthstargroup.biz" email addresses and NorthStar-branded signature blocks.  *Id.* at 14. Monroe also identifies three attorneys associated with NorthStar who were responsible for reviewing and distributing SDI's copyright policies.  Pl.'s Obj. ¶ 113.  Monroe argues that SDI contributors were instructed to consult these attorneys before publishing unlicensed third-party photographs, suggesting a system of centralized review under NorthStar's direction.  Further, he notes that SDI's copyright policies were issued on NorthStar Group letterhead, reinforcing the appearance of a supervisory relationship.  Pl.'s Obj. ¶ 113.

Defendants dispute these assertions, arguing that NorthStar Source Group, LLC is merely an IP holding company that licenses "The Source" trademarks to SDI, and that it neither owns nor operates the website or Instagram account where the alleged infringement occurred.  Defs.' Br. at 2.  They assert that all of SDI's contributors are independent contractors who were not engaged by NorthStar Source Group.  Defs.' Br. at 2.  Defendants also argue that "The NorthStar Group" is not a legal entity but a brand used for marketing purposes and that it does not employ any contributors.  *Id.* at 2-3.

While the record contains evidence suggesting that NorthStar-affiliated personnel played a role in guiding SDI's editorial policies and copyright compliance, Defendants have raised a genuine dispute as to whether NorthStar had the practical ability to supervise or influence the infringing conduct at issue.

## 2. Direct Financial Interest

The second element of vicarious liability requires a causal relationship between the infringing activity and a financial benefit to the defendant. *Valuewalk*, 345 F. Supp. 3d at 503. Courts have found this element satisfied where the availability of infringing content acts as a draw for users or enhances the value of a platform or brand. *See Rams v. Def Jam Recordings, Inc.*, 202 F. Supp. 3d 376, 385 (S.D.N.Y. 2016).

Monroe argues that SDI's publication of the Subject Photographs on its Instagram account enhanced user engagement and contributed to SDI's brand recognition, thereby increasing the value of its advertising platform. Pl.'s Br. at 13. He notes that the Instagram account includes links to SDI's revenue-generating website and is used to promote SDI's digital content. *Id.* at 12-13. Monroe also points out that SDI has licensed photographs for use on Instagram in the past and that it gained followers and exposure after posting the Subject Photographs. Pl.'s Obj. ¶¶ 89, 95. Defendants counter that SDI does not earn revenue from individual Instagram posts and that all content is published by independent contractors. Defs.' Br. at 2. They emphasize that SDI does not run advertisements on its Instagram page and argue that any increase in followers is too attenuated to constitute a financial benefit. *Id.* at 6, 22 ("Plaintiff has not offered any evidence showing that his Photographs 'drew' viewers to SDI's Instagram account in manner exceeding normal traffic based on the account's other content."). Defendants also maintain that NorthStar has no ownership interest in SDI and therefore cannot benefit from its commercial success. *Id.* at 23.

On this record, the Court concludes that a triable issue of fact remains as to whether NorthStar derived a direct financial benefit from SDI's alleged infringement. Accordingly,

summary judgment is denied as to Monroe's claim for vicarious copyright infringement against NorthStar.

### B.  Contributory Infringement

To establish contributory copyright infringement, a plaintiff must show that the defendant, with knowledge of the infringing activity, either induced, caused, or materially contributed to the infringement. *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 117-18 (2d Cir. 2010).  The knowledge requirement may be satisfied by actual knowledge or willful blindness and is assessed under an objective standard whether the defendant knew or had reason to know of the infringement.  *Id.* at 118.

Monroe argues that NorthStar is liable as a contributory infringer based on both its knowledge of the unauthorized use of the Subject Photographs and its material role in the publication process.  Pl.'s Br. at 15.  According to Monroe, the photographs were widely published with clear copyright management information identifying him as the author, and were not available on the three platforms approved for use under SDI's internal copyright policy.  *Id.*  That policy, Monroe contends, required that any third-party images not sourced from the authorized platforms be reviewed and approved by attorneys affiliated with NorthStar.  Pl.'s Reply at 11.  Monroe points to evidence that NorthStar attorneys distributed and updated this policy, and were designated as the points of contact for contributors unsure of a photo's licensing status.  *Id.*  He also highlights that one of the infringing posts occurred after Monroe's initial cease-and-desist letter, suggesting that NorthStar was on notice of the alleged infringement but failed to act.  Pl.'s Br. at 15.

Defendants dispute these assertions and contend that NorthStar lacked the knowledge necessary for contributory liability.  Defs.' Br. at 25.  According to Defendants, NorthStar was not involved in the review or publication of SDI's social media posts and had no awareness of the

allegedly infringing activity until after Monroe's cease-and-desist correspondence. *Id*. They further argue that any advisory role played by NorthStar's attorneys does not equate to the "substantial" assistance required to establish contributory infringement and deny acting in concert with SDI. *See Livnat v. Lavi*, 1998 WL 43221, at *3 (S.D.N.Y. Feb. 2, 1998).

The parties' competing positions present genuine disputes of material fact. Monroe has submitted evidence suggesting that NorthStar was closely involved in administering SDI's copyright policy and had oversight responsibilities for unlicensed content. Defendants deny that these roles were carried out in practice or that NorthStar had any awareness of the Subject Photographs' origins. Whether NorthStar's involvement constituted knowledge or substantial contribution, and whether that involvement was more than merely advisory, cannot be resolved on summary judgment. Accordingly, Monroe's motion for summary judgment on contributory infringement is denied.

## III.   Digital Millennium Copyright Act

The DMCA prohibits both the removal or alteration of CMI and the distribution of works with false CMI, where such conduct is done knowingly and with the intent to induce, enable, facilitate, or conceal infringement. *See* 17 U.S.C. § 1202(a)-(b). Monroe moves for summary judgment on the claim that Defendants violated both provisions by removing his CMI from the Subject Photographs and distributing them under Source's brand without authorization. Pl.'s Reply at 2. Defendants contend that there are disputed material facts as to whether Monroe's original works contained CMI, whether SDI knowingly removed it, and whether Source's branding constitutes false CMI. Defs.' Br. at 12-17. For the reasons that follow, summary judgment on Monroe's DMCA claims is denied.

### A.    Removal of CMI (§ 1202(b))

To establish a violation under § 1202(b), Monroe must show (1) that his photographs included CMI, (2) that Defendants removed or altered that CMI without authorization, and (3) that the removal was done intentionally and with knowledge—or reason to know—that it would facilitate or conceal infringement. *Fischer v. Forrest*, 286 F. Supp. 3d 590, 608 (S.D.N.Y. 2018). The DMCA imposes a double scienter requirement under § 1202(b). First, a defendant must have actual knowledge that the CMI has been removed or altered without the authority of the copyright owner or the law. 17 U.S.C. § 1202(b)(1). Second, the defendant must know, or have reason to know, that distributing the work without accurate CMI will induce, enable, facilitate, or conceal infringement. 17 U.S.C. § 1202(b)(3). *Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 172-74 (2d Cir. 2020). Importantly, "infringement" includes the defendant's own infringement, not just that of third parties or future conduct. *Id.*

Monroe identifies his CMI as his social media handle "@tdoteric," which he argues was visibly overlaid on the Subject Photographs in red font at the time of publication on his website and Instagram account. Pl.'s SOF ¶¶ 31-32. He claims that SDI intentionally cropped out this information before posting the photos publicly, and that doing so concealed his authorship and deprived him of attribution. Pl.'s Br. 17. Monroe also alleges that Defendants' cropping was not incidental but done to suppress any indication of copyright ownership and facilitate Source's commercial use without a license. *Id.*

In response, Defendants argue that there are material disputes of fact as to whether the original versions of the photographs contained any CMI at all. Defs.' Br. at 14. They point to Monroe's First Amended Complaint and Exhibit A, which included versions of the photographs that lacked the "@tdoteric" mark. FAC, Ex. A. Defendants argue that Monroe's later submission

of images bearing the CMI amounts to a factual inconsistency that must be resolved by the jury. They further contend that SDI did not personally crop or alter any images, and that the versions used may have been sourced from third-party websites where CMI was already absent. Defs.' Br. at 18. Courts have denied summary judgment under similar circumstances where there is a factual question as to intentional removal. *See Grecco v. Age Fotostock Am., Inc.*, 2021 WL 4555599, at *7 (S.D.N.Y. Oct. 5, 2021).

Because establishing scienter under § 1202(b) requires showing actual or constructive knowledge, and because intent is typically reserved for the jury, summary judgment on this claim is not appropriate. Accordingly, Monroe's motion for summary judgment under § 1202(b) is denied.

### B.    False CMI (§ 1202(a))

Under § 1202(a), Monroe must show that Defendants knowingly provided or distributed false CMI with the intent to induce, enable, facilitate, or conceal infringement. 17 U.S.C. § 1202(a). *See Trombetta v. Novocin*, 2021 WL 6052198, at *10 (S.D.N.Y. Dec. 21, 2021). Monroe argues that SDI's inclusion of its brand name "The Source" and the hashtag "#sourceclassics" on the infringing posts amounts to false CMI, because it misrepresents ownership and falsely suggests a license or association with Monroe. Pl.'s Br. at 18-19. Defendants argue that neither the account name "The Source" nor the hashtag "#sourceclassics" is used in connection with the photographs in a manner that signals authorship or copyright ownership. Defs.' Br. at 15-16. They argue that these identifiers serve as branding or categorization, not as claims of authorship. *Id.* Courts have generally required more than branding to support a false CMI claim. *See Shihab*, 2024 WL 3461351 at *8. The Court agrees with Defendants that whether the brand elements actually constitute false CMI and whether they were used with the intent to conceal infringement raise

24

factual questions inappropriate for summary judgment. Accordingly, Monroe's motion for summary judgment under § 1202(a) is denied.

## IV.    Motion to Seal

Monroe also requests to file under seal ten exhibits filed in support of his motion for summary judgment. *See* Mot. to Seal, ECF No. 34. The basis for Monroe's sealing motion is that these documents were designated as confidential pursuant to a stipulated protective order entered by the Court on April 23, 2024. *See* Stipulated Protective Order, ECF No. 25. In that order, the Court noted that it "retains discretion as to whether to afford confidential treatment in its opinions and orders to information the parties have redacted, sealed, or designated as confidential," and that it "retains the discretion to allow disclosure of any subject covered by this stipulation or to modify this stipulation at any time in the interest of justice." *Id.* at 8.

Monroe has not provided any basis for the continued sealing of these six exhibits other than their designation by the parties as confidential. But that is an insufficient justification, as "the mere existence of a confidentiality order says nothing about whether complete reliance on the order to avoid disclosure [i]s reasonable." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 126 (2d Cir. 2006). That is particularly so where, as here, the protective order "specifically contemplates that relief from the provisions of the order may be sought at any time." *Id.* Accordingly, the motion to seal is **DENIED** without prejudice to renewal by either party or by the parties jointly.

Any renewed request for permanent sealing of Exhibits 4, 5, and 7-14 of the Paladino Declaration (the "Exhibits") shall be filed within **two weeks** of the date of this Order. Any such request shall be made in accordance with this Court's Individual Rule 6(d); shall contain citations to relevant legal authorities supporting each sealing request; and shall, where possible, be accompanied by versions of the Exhibits with appropriately narrowly tailored redactions.

The Exhibits shall remain temporarily under seal with access limited to the parties.  If no renewed sealing request is filed within two weeks, the Court will order the Exhibits unsealed.  If a sealing request is filed, the Exhibits will remain under seal until the Court resolves the request.

**CONCLUSION**

For the reasons stated above, Monroe's motion for summary judgment is **GRANTED** as to Source Digital, Inc.'s liability for direct copyright infringement (except as to Images 4 and 11), and **DENIED** as to the willfulness of that infringement, NorthStar's vicarious and contributory liability, and Defendants' alleged violations of the Digital Millennium Copyright Act under 17 U.S.C. § 1202(a) and (b).  Monroe's motion to seal is **DENIED** without prejudice to renewal within two weeks of the date of this Order.

Within **two weeks of the date of this Order**, the parties shall submit a joint letter stating their availability for trial in November and December 2025.

The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 29 & 34.

SO ORDERED.

Dated: July 15, 2025
   New York, New York

DALE E. HO
United States District Judge